ATTORNEY GENERAL vs. INTERNATIONAL MARATHONS, INC.
& another.[1]

Suffolk.    March 8, 1984. — July 3, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Charity. Corporation,* Charitable corporation. *Practice, Civil,* Moot case.
*Words,* "Charitable."

Although a contract between the Boston Athletic Association and defendants
who were allegedly soliciting contributions on its behalf was determined
to be void ab initio, an action by the Attorney General for enforcement
of provisions of G. L. c. 68, §§ 21 and 23, against the defendants should
not have been dismissed as moot, inasmuch as the defendants' obliga-
tions, if any, to register and post a bond under § 23, did not depend on
the existence of a contract. [372-373]

A promoter's sales of commercial sponsorships in connection with the run-
ning of the Boston Marathon road race did not constitute a solicitation
of contributions to the Boston Athletic Association and, consequently,
the promoter was not required, under G. L. c. 68, § 23, to register and
post a bond with the Attorney General or, under G. L. c. 68, § 21, to
file with the Attorney General any contract between it and the association.
[373-375]

CIVIL ACTION commenced in the Superior Court Department
on September 27, 1982.

The case was heard by *Steadman, J.,* on a motion to dismiss.

The Supreme Judicial Court granted a request for direct
appellate review.

*Edward J. Barshak (Tina M. Traficanti* with him) for the
defendants.

*Catharine W. Hantzis,* Assistant Attorney General (*Leslie
G. Espinoza,* Assistant Attorney General, with her) for the
plaintiff.

[1] Marshall Medoff, individually and as president and director of Interna-
tional Marathons, Inc.

LYNCH, J. This is an action brought by the Attorney General against the defendants, International Marathons, Inc. (IMI), and Marshall Medoff, seeking to enforce the provisions of G. L. c. 68, §§ 21 and 23, with respect to the defendants' activities as solicitors of contributions on behalf of the Boston Athletic Association (BAA). A judge in the Superior Court granted the defendants' motion to dismiss, believing the issue to be moot as a result of his concurrent order holding that the contract between IMI and the BAA was void ab initio.[2] We affirm the dismissal, although for different reasons.

The background of this case and the specifics of the contract between IMI and the BAA are explained in detail in *Boston Athletic Ass'n* v. *International Marathons, Inc.*, ante 356 (1984). Briefly, the pertinent facts are as follows. The BAA is incorporated as a nonprofit corporation. Although its amended by-laws describe its purpose as the general encouragement of amateur sports and physical exercise, its main function is the presentation of the annual Boston Marathon (Marathon). The amended Articles of Organization specify that "the net earnings of the Association shall be devoted exclusively to charitable or educational purposes or for the promotion and regulation of amateur sports competition." Realizing that funds were needed to finance the Marathon, the board of governors of the BAA authorized its president to enter into sponsorship contracts. This authorization led to the contract between the BAA and IMI, a corporation organized for the purpose of carrying on the business of sales and sports promotions. Pursuant to the contract, IMI was to solicit sponsors for the Marathon. It was entitled to retain all fees paid by the sponsors in excess of $400,000. On July 15, 1982, the BAA submitted a copy of this contract to the division of public charities of the office of the Attorney General (division). It was not "filed" with the division,[3] but was submitted for the division's consid-

---

[2] That order is affirmed today in *Boston Athletic Ass'n* v. *International Marathons, Inc.*, ante 356 (1984).

[3] General Laws c. 68, § 21 (*c*), as amended through St. 1981, c. 345, § 2, provides in pertinent part: "Every contract between a professional fund-raising counsel and a charitable organization and every contract or a

eration as to whether it was subject to the filing requirement. At the time of this submission, counsel to the BAA indicated that it did not feel filing was required, as the contract did not contemplate the solicitation of charitable contributions, because the funds received by the BAA from sponsors were in the context of commercial transactions. On September 9, 1982, the director of the division informed IMI that she had disapproved the contract with the BAA because it seemed likely that IMI's compensation would exceed the fifteen percent maximum provided by G. L. c. 68, § 21 (*a*). On September 21, 1982, IMI protested the fact that it had ever "filed" the contract for the division's examination and requested a hearing to review the director's decision. On September 27, 1982, the Attorney General commenced this action alleging violations of G. L. c. 68, § 21, for failure to file the contract with the division and of G. L. c. 68, § 23, for failure to register and post a bond with the division prior to engaging in charitable solicitation activities. After the hearing requested by IMI, the hearing examiner issued an opinion in which she found that the BAA was a "charitable organization" within the meaning of G. L. c. 68, and that the contract between the BAA and IMI was governed by the statute. This decision was appealed by IMI and the appeal was dismissed as moot. That dismissal is affirmed this day in *International Marathons, Inc.* v. *Attorney Gen., post* 376 (1984).

1. This action should not have been dismissed as moot. An issue is moot when "[t]he parties no longer have a stake in the determination of that issue." *First Nat'l Bank* v. *Haufler,* 377 Mass. 209, 211 (1979). Although the contract between the BAA and IMI is no longer in effect, the applicability of G. L. c. 68, § 23, does not depend on the existence of a contract. It is the act of solicitation by the solicitor that triggers the stat-

written statement of the nature of the arrangement to prevail in the absence of a contract between a professional solicitor and a charitable organization . . . shall be filed with the director of the division . . . ." One purpose of this filing requirement is to enable the division to determine whether the compensation provided for in the contract is likely to exceed fifteen percent of the total moneys raised by the solicitation, which would be in violation of G. L. c. 68, § 21 (*a*).

utory obligations of registration and posting of a bond.[4] It is not disputed that IMI did in fact solicit sponsorships for the Marathon. Whether IMI is compensated according to the terms of the contract or according to the fair value of its services, it still would have to register and post bond pursuant to § 23 if that section applies. With respect to the alleged violation of § 21, for failure to file the solicitation contract with the division, the judge's conclusion that it was moot was correct. Section 21 (*c*) refers to a "contract" or "a written statement of the nature of the arrangement to prevail in the absence of a contract." Now that the contract has been declared void, it makes little sense to say that IMI was obliged to file it with the division.

2. Although the controversy is not moot, dismissal was nonetheless proper in this case because the provisions of G. L. c. 68 do not apply to the type of activity involved here. General Laws c. 68 regulates the activity of professional solicitors of charitable "contributions." A "contribution" is defined in G. L. c. 68, § 18, inserted by St. 1964, c. 718, § 1, as "the promise or grant of any money or property or anything of value." A "professional solicitor" is one who solicits "contributions directly or in the form of payment for goods or services . . . for charitable purposes." Although this language is broad, it is not broad enough to include the sale of sponsorships, advertising, and promotional rights. We disagree with the conclusion of the hearing examiner that as long as the goods or services received in return for a contribution are integrally related to the purposes of the charitable organization (as promotional rights invariably would be) the contribution is charitable within the meaning of the statute.[5] While we agree that getting some-

---

[4] General Laws c. 68, § 23 (*a*), as amended by St. 1980, c. 572, § 23, provides that "No person shall *act* as a professional fund-raising counsel or professional solicitor for a charitable organization . . . unless he has first registered with the division" (emphasis added).

[5] Even if the decision of the hearing examiner were before us, which it is not in this case, we would not be obliged to accept her interpretation of the statutory definition of "contribution," as it is a conclusion of law. *Maryland Casualty Co.* v. *Commissioner of Ins.,* 372 Mass. 554, 559 (1977).

thing in return does not automatically disqualify a donation as
"charitable," cf. *Commonwealth* v. *Schren,* 26 Pa. D. & C.
2d 275 (1961), aff'd 406 Pa. 337 (1962) (contributions made
to help produce a yearbook on behalf of disabled veterans were
"charitable," despite the fact that the contributors received
advertising space in the book), there must be a substantial
element of charitable intent. The test for determining whether
a contribution is charitable for tax purposes uses the concept
of quid pro quo. "[I]f the benefits received, or expected to be
received, are substantial . . . greater than those that inure to
the general public from transfers for charitable purposes (which
benefits are merely *incidental* to the transfer), then in such
case we feel the transferor has received, or expects to receive,
a *quid pro quo* sufficient to remove the transfer from the realm
of deductibility." *Singer Co.* v. *United States,* 449 F.2d 413,
423 (Ct. Cl. 1971).

One look at the brochure produced by IMI to send to pro-
spective sponsors vividly demonstrates that sponsorship was
being offered as a commercial rather than a philanthropic op-
portunity. The brochure certainly describes the race as an event
of great historical, cultural, and athletic significance, but its
purpose is to demonstrate to potential sponsors how the event
can be used to commercial advantage. For example, one of
the "Sponsorship Benefits" is described as "[i]nvolvement in
a sports event which delivers a broad-based, up-scale consumer
audience with substantial purchasing power." The brochure
also promises that "[s]ponsors will have immediate visibility
and impact throughout the nation and the world, since the
Boston Marathon is the most effective and best defined inter-
national marketing opportunity in running." These are but two
illustrations of IMI's solicitation practices, which clearly em-
phasize the benefits sponsors will get in terms of product vis-
ibility and public relations through association with the
Marathon. In return for these benefits, the sponsor pays a fee.
This is a commercial transaction. It is not a gift. It is a corporate
opportunity. It has nothing to do with philanthropy. It is not
a charitable contribution.

Therefore, since the funds raised by IMI on behalf of the BAA were not charitable contributions, the provisions of G. L. c. 68, §§ 21 and 23, that IMI register and post a bond as a professional solicitor and that the contract between IMI and the BAA be filed with the division do not apply. The complaint of the Attorney General was properly dismissed.

*Judgment affirmed.*