1998 ME 162

**Zagonyi TUNGATE**

v.

**MacLEAN–STEVENS STUDIOS, INC.**

Supreme Judicial Court of Maine.

Argued April 9, 1998.

Decided June 26, 1998.

Jon Holder (orally), Holder & Grover, P.A., Portland, for Appellant.

John H. Rich (orally), Perkins, Thompson, Hinckley & Keddy, Portland, for Appellee.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, LIPEZ and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Zagonyi Tungate appeals from a summary judgment entered in the Superior Court (Cumberland County, *Calkins, J.*) in favor of defendant MacLean–Stevens on both counts of Tungate's complaint. Tungate contends that the summary judgment was erroneously granted because MacLean–Stevens engaged in unfair trade practices: (1) by failing to disclose to students and parents that commissions were paid to the schools in exchange for the school's permission to photograph the students, and (2) by maintaining a price differential for allegedly indistinguishable "finishes" on the photos.[1] We disagree and affirm the judgment.

[¶ 2] Tungate is the parent of children in the Falmouth school system. MacLean–Stevens sells student photographs to families throughout New England, including those in the Falmouth School system. For schools that so choose, MacLean–Stevens provides an option by which the school receives a 20% commission on the company's sales of photos to parents. For portraits taken at the schools receiving a commission, MacLean–Stevens charges a higher amount for the portraits than it charges at schools that do not take the commission. Portrait prices at schools receiving a commission are, on average, approximately 24% higher, so that parents effectively pay for the commission. In Maine, approximately 70% of the schools choose to take the commission. MacLean–Stevens believes that if it did not offer commissions to schools, it would lose a substantial portion of its business. Tungate purchased portraits from MacLean–Stevens, and her children attended schools in the Falmouth system that accepted the commission.[2]

[¶ 3] In the flier/order form it sends to parents, MacLean–Stevens offers four "finishes" for each of its portrait packages: standard, deluxe, classic, or premier. The price difference between the most expensive option, the premier, and the lease expensive option, the standard, is approximately $10. Among all four finishes, there is actually no difference in the chemical process, surface texture, paper type, vignetting or tendency not to fade. There is a tangible photographic difference, however, between portraits ordered with the standard or classic finish, that do not have "soft touch filtering," and the deluxe and premier finishes. For the deluxe and premier finishes, the photographer uses another lens that tends to soften facial blemishes. Further, the premier and classic packages provide 12 additional wallet portraits. Although the actual finishes of the photos are identical, each option has attributes that are different from each of the others.

I.

■ [¶ 4] Tungate first contends that the court erred in concluding that MacLean–Stevens did not violate the Charitable Solicitations Act on the basis that the parents' payments were not "contributions" pursuant to

---

1. Because we affirm the judgment in favor of MacLean–Stevens, we need not address its appeal of the denial of its motion to disqualify Tungate's attorney.

2. In 1995, the Plummer–Motz School and the Lunt School received $1,348.70 and $821.10 respectively in commissions. The high school in Falmouth chose not to accept the commission.

the Act.[3] A violation of the Charitable Solicitations Act, 9 M.R.S.A. §§ 5001–5016 (1997) is a *per se* violation of the Unfair Trade Practices Act (UTPA).[4] *See id.* § 5014.[5] The Charitable Solicitations Act requires all persons who solicit contributions to disclose fully the name of the charitable organization for whom the solicitation is being conducted. *See id.* § 5012(1).[6] The court held that the sale of portraits by MacLean–Stevens did not meet the definition of "solicitation" because the parents did not make "contributions" as defined by the Charitable Solicitations Act.

[¶ 5] When reviewing the grant of summary judgment, we "view the evidence before the court in the light most favorable to the party against whom the judgment was granted to determine if the trial court committed an error of law." *Guiggey v. Bombardier*, 615 A.2d 1169, 1171 (Me.1992).

■ [¶ 6] Our review of the Charitable Solicitations Act leads us to conclude that the Act does not apply to transactions when the payor does not know that a purported charitable recipient[7] is receiving any benefit, and the payor and seller are in substance parties

to a commercial transaction. Both the history of the Act and a straightforward reading of its language make clear that its overriding purpose is to protect Maine consumers from professional fund raisers or those who would exploit a charitable cause for personal benefit. In enacting the Charitable Solicitations Act, the Legislature intended that the public's charitable instincts not be exploited for noncharitable purposes.[8] The Act contains language aimed at preventing abuses by professional fund raisers and curbing what was described as "continued solicitations by organizations or corporations that fraudulently pocket contributions for purposes other than charitable causes." *State v. Events Int'l, Inc.*, 528 A.2d 458, 461 (Me.1987). There is nothing to indicate that section 5012 is directed at transactions lacking a philanthropic purpose.

■ [¶ 7] This case does not involve the solicitation of charitable contributions. MacLean–Stevens did not fraudulently use a "charitable cause" to profit, nor were pur-

---

3. Title 9 M.R.S.A. § 5003(4) provides:
   "Contribution" means the promise or grant of any money or property of any kind or value, including the payment or promise to pay in consideration of a sale, performance or event of any kind which is advertised in conjunction with the name of any charitable organization. . . .

4. *See* 5 M.R.S.A. §§ 205–A–214 (1989).

5. Section 5014 of the Act provides:
   Any violation of this chapter shall constitute a violation of Title 5, chapter 10, the Unfair Trade Practices Act.
   Any intentional violation of this chapter shall be a Class D crime.

6. Title 9 M.R.S.A. § 5012 provides:
   **Charitable solicitation disclosure**
   It shall be a violation of this chapter for:
   1. Solicitation of contributions. Any person to solicit contributions from a prospective donor without fully disclosing to the prospective donor, at the time of solicitation but prior to the request for contributions, the name and address of the charitable organization for which the solicitation is being conducted; and
   2. Solicitation by a professional charitable fund raiser. Any professional fund-raising counsel, professional solicitor or commercial coventurer, or any of its agents or persons acting on its behalf, to solicit contributions

from a prospective donor without fully disclosing to the prospective donor at the time of solicitation but prior to the request for contributions:
   A. The name and address of the professional fund-raising counsel, professional solicitor or commercial coventurer; and
   B. The following statement:
   "(Insert name of professional fund-raising counsel, professional solicitor or commercial coventurer) is a professional charitable fund raiser."

7. An educational purpose is by definition charitable. Title 9 M.R.S.A. §§ 5003(2).

8. *See, e.g.,* 9 M.R.S.A. § 5013(1) (1997) ("No person shall, for the purpose of soliciting contributions from persons in this State, use the name of any other person, without the specific written consent of the other person.") (enacted in original statute).

   The exploitation of citizens' altruistic urges was a central concern when the Legislature enacted the Charitable Solicitations Act. *See* Legis. Rec. 2234 (1st Reg.Sess.1977) ("[F]or the first time we are going to have. legislation on the books which will prohibit the unauthorized use of people's names or charities' names."); *see also id.* ("[I]t will help all of those people that like to give of the bounties that they have received in their life to aid other people.").

chasers of photos making payments in the belief that they were supporting a charitable purpose.[9] We agree with the Massachusetts Supreme Judicial Court's construction of the similar, though even broader, statutory definition of "contribution,"[10] in the case of a company that sought sponsorships from advertisers on behalf of a charitable organization. *See Attorney General v. International Marathons, Inc.*, 392 Mass. 370, 467 N.E.2d 51 (1984). Holding that the sale of sponsorships, advertising, and promotional rights was not a solicitation of contributions for charitable purposes, the court looked to the substance of the transaction and the donor's lack of a philanthropic goal:

> While we agree that getting something in return does not automatically disqualify a donation as "charitable," . . . there must be a substantial element of charitable intent. . . . This [payment by a sponsor] is a commercial transaction. It is not a gift. It is a corporate opportunity. It has noth-

ing to do with philanthropy. It is not a charitable contribution. *Id.* 467 N.E.2d at 54. So, too, the sale of photos in the absence of any identification of the school as a benefactor "has nothing to do with philanthropy," *id.* It is a business transaction between the parents and MacLean–Stevens that is not regulated by the Charitable Solicitations Act.[11]

■ [¶ 8] Tungate further argues that MacLean–Stevens violated 9 M.R.S.A. § 5012(2) that requires any professional fund-raising counsel,[12] professional solicitor[13] or commercial coventurer[14] to identify itself in a specific manner to prospective donors. MacLean–Stevens was not a commercial coventurer, because its activities in this case were not "advertised in conjunction with the name of any charitable organization."[15] 9 M.R.S.A. 5003(3). Neither do the definitions of professional fund-raising counsel and professional solicitor apply, because MacLean–Stevens did not solicit contributions on behalf of a charitable organization.

---

9. *See* 15 Am.Jr.2d *Charities* § 123 (1976) (A gift not restricted expressly or by implication to charitable uses cannot be considered charitable merely because it *might* be applied to a charitable purpose.). As a commercial transaction, a parent's payment to MacLean–Stevens in a school which does not make public the commission practice is not even impliedly dedicated to any charitable use.

10. The Massachusetts Charitable Solicitation statute provides:
    "Contributions," the promise or grant of any money, property, credit, financial assistance, sponsorship or anything of value including the payment or promise to pay in consideration of a performance event or sale of a good or service by a charitable organization or a commercial coventurer. . . .
    MASS.GEN.LAWS ANN. ch. 68, § 18 (1998).

11. We do not decide whether section 5003(4) of the Charitable Solicitations Act would be implicated if MacLean–Stevens had identified the school and linked the sales of portraits to a charitable purpose.

12. Title 9 M.R.S.A. § 5003(9) provides in pertinent part:
    "Professional fund-raising counsel" means any person who, for a flat fixed fee under a written agreement or for a fee computed under a written agreement on the basis of funds actually raised or to be raised, or for any financial consideration of any kind or amount, plans, conducts, manages, carries on, advises or acts

as a consultant, whether directly or indirectly, in connection with soliciting contributions for or on behalf of any charitable organization. . . .

13. Title 9 M.R.S.A. § 5003(10) provides:
    "Professional solicitor" means any person who for a financial or other consideration engages, employs, directs or contracts with any other person to solicit contributions or directs agents, servants or employees specially employed by or for a charitable organization for the purpose of soliciting contributions. . . .

14. Title 9 M.R.S.A. § 5003(3) provides:
    "Commercial coventurer" shall mean any person who, for profit or other commercial consideration, shall conduct, promote, underwrite, arrange or sponsor a sale, performance or event of any kind which is advertised in conjunction with the name of any charitable organization. Any such person who will benefit in good will only shall not be deemed a commercial coventurer if the collection and distribution of the proceeds of the sale, performance or event are supervised and controlled by the benefiting charitable organization.

15. There is no evidence that MacLean–Stevens "advertised in conjunction with the name of any charitable organization." The fliers that are part of the record have no information about the specific school. The name of the school is not on the flier. There is no link between a stated charitable cause and the company's promotion.

## II.

■ [¶ 9] Tungate also contends that the court erred in concluding that the failure of MacLean–Stevens to disclose the commissions was not unfair or deceptive. We look to federal precedent in analyzing the Maine Unfair Trade Practices Act. *See* 5 M.R.S.A. § 207(1) (1989) ("It is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act. . . ."). *See also Binette v. Dyer Library Ass'n,* 688 A.2d 898, 906 (Me.1996).

> To justify a finding of unfairness [pursuant to the UTPA] the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided.

*Suminski v. Maine Appliance Warehouse, Inc.,* 602 A.2d 1173, 1174 n. 1 (Me.1992).[16] The court correctly concluded that Tungate's injuries were not substantial enough to merit a violation of the UTPA.

■ [¶ 10] The substantial injury requirement is designed to weed out "trivial or merely speculative harms." *Legg v. Castruccio,* 100 Md.App. 748, 642 A.2d 906, 917 (1994) (citing Letter from Federal Trade Comm'n to Senators Ford and Danforth (Dec. 17, 1980), reprinted in H.R.Rep. No. 156, Pt. 1, 98th Cong., 1st Sess. 33–40 (1983)). The difference between some portrait packages in schools that received a commission and those that did not is as little as $1.25, in the case of a $7 package. Such a difference would clearly be insubstantial, and there is nothing in the record to indicate which portrait package Tungate actually purchased.

■ [¶ 11] Moreover, to the extent that her complaint is based on what she considers unfair pricing, Tungate's reliance on the UTPA is further misplaced. In pric-

ing cases under the Act the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase. *See Kazmaier v. Wooten,* 761 F.2d 46, 51 (1st Cir.1985) (quoting *Purity Supreme, Inc. v. Attorney Gen.,* 380 Mass. 762, 407 N.E.2d 297, 307 (1980) (a practice may be deceptive if it "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted")); *Resort Car Rental Sys., Inc. v. F.T.C.,* 518 F.2d 962, 963 (9th Cir.1975) (Federal Trade Act is violated if it induces the first contact through deceptive price); *F.T.C. v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1029 (7th Cir.1988) ("In order to establish that an act or practice is deceptive, the FTC must establish that the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment."). The higher price on the MacLean–Stevens fliers does not operate to induce consumers to purchase photos they would not otherwise purchase if no commission were paid and prices were 20% lower;[17] the commission practice does not induce consumers to act to their detriment and is not deceptive within the meaning of the UTPA.

## III.

[¶ 12] Tungate also contends that the court erred by failing to find that it was deceptive for MacLean–Stevens to offer different "finishes" at a range of prices, when all four packages offer the exact same protective chemical treatment on identical paper. In addition to concluding that the descriptions of the various finishes in the photo price list were "mere puffing or sales hyperbole which is not deceptive or unfair," the court held that Tungate had made no showing that she suffered any loss because of the description of the finishes.

■ [¶ 13] "To be entitled to the remedial measures authorized by the UTPA,

---

**16.** This test is now codified in the federal statute. *See* 15 U.S.C.A. § 45(n) (1997).

**17.** As the Superior Court noted, it is possible that disclosure of the commission could "promote the

selling of even more portraits since parents would know that part of the price they paid would go to a worthy cause."

the [plaintiff] must show a loss of money or property as a result of the UTPA violation." *VanVoorhees v. Dodge,* 679 A.2d 1077, 1082 (Me.1996); *see also Parker v. Ayre,* 612 A.2d 1283, 1284 (Me.1992). The plain language of the statute denies relief for plaintiffs who do not demonstrate injury from the alleged deceptive or unfair practice. *See* 5 M.R.S.A. § 213(1) (Supp.1997). Tungate has in fact shown no loss as a result of the description of the finishes: neither her affidavit nor her statements of facts contain any information as to which finishes she purchased or the prices she paid. Tungate has failed to demonstrate a substantial injury.

The entry is:

Judgment affirmed.

