STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

DEC 28   3 09 PH '00

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-461

TDW - CUM - 12/28/200

DONALD L. GARBRECHT
LAW LIBRARY

PHILIP BROWN, et al.,

Plaintiffs

vs.

PEOPLES HERITAGE BANK, et al.,

Defendants

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

JAN 3 2001

Defendant Peoples Heritage Bank moves for summary judgment dismissing the complaint in the above-captioned case. Oral argument on the motion was scheduled for December 22, 2000 but counsel for plaintiff was not present. He has since advised that his absence resulted from a misunderstanding with the clerk's office.[1] Because this case is on the trial list, the court has considered the motion based on the written submissions of the parties.

In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set froth in the parties' Rule 7(d) statements. Handy Boat Service, Inc. v. Professional Services, Inc., 1998 ME 134, ¶ 16, 711 A.2d 1306, 1310. The facts must be considered in the light most favorable to the non-moving party. E.g., Panasonic Communications

---

[1] It is the court's understanding that plaintiffs' counsel believes he was advised by the clerk's office that he did not need to appear for argument on the motion because this case is on the trial list and the motion would therefore be addressed at the time of jury selection. Although the court accepts that a misunderstanding occurred for purposes of this order, it notes that if everyone concerned had been aware both that this was on a trial list and that a motion hearing had been separately scheduled, plaintiffs' counsel should not have been left with any impression that he did not need to appear at the hearing on the motion.

& Systems Co. v. State of Maine, 1997 ME 43, ¶ 10, 691 A.2d 190, 194. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, if the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Harkness v. Fitzgerald, 1997 ME 207, ¶ 5, 701 A.2d 370, 372.

This case arises out of the sale of a residential dwelling in Aroostook County in 1997. For purposes of the motion for summary judgment, the following facts are undisputed or must be taken as true:

Plaintiffs Philip and Karen Brown purchased a cabin in Soldier Park, Maine in 1997. Mortgage financing for the purchase was provided by Peoples Heritage Bank. As a condition of financing, the Bank required a water test for certain substances including e. coli, coliform, and nitrates but did not require a water test for the presence of lead. Peoples Rule 7(d) Statement ¶ 5. However, the Browns had asked for a water test for lead, apparently because they were seeking a VA loan guarantee and the VA required such a test. Plaintiffs' Rule 7(d) Statement at ¶ 5.

Prior to the closing the Bank received the results of the water tests it sought and also received a fax showing the result of the test for lead. That test result, which is contained in the record as a fax on the stationary of Northeast Laboratory in Waterville, stated that the result of the test for lead showed lead was present in the amount of 0.015 mg/L. It also included the following comment: "Lead exceeds acceptable limit of 0.015 mg/L." On its face this report is ambiguous. Its stated result

was that the lead content exactly equalled the allowable standard of 0.015 but the accompanying comment simultaneously suggested that the lead exceeded that standard.

Below the test result and comment, the Northeast Laboratory report stated that "[t]his water is unsatisfactory for drinking for the above test(s) only. Please see the enclosed data sheet for the asterisked reason(s)." The relevant portion of the enclosed sheet in turn reiterated that the primary drinking water standard for lead was .015 milligrams per liter and that lead in amounts over that standard may cause significant health problems. This did nothing to dispel the ambiguity on the first page of the test report.

The Browns state that the test result for lead from Northeast Laboratory was not disclosed to them prior to the closing and instead that Peoples employee Carolyn Plourde affirmatively told them that the water tests had been satisfactory. This statement, which the court assumes was made for purposes of summary judgment, constituted a misprepresentation that all tests (including the test for lead which was at best ambiguous) were satisfactory. The Browns did not learn of the test result for lead -- which they characterize as negative rather than ambiguous -- until after the closing.

The Browns do not contend that any members of their family have incurred any health problems or incurred any medical expenses as a result of any lead in the water at the Soldier Pond dwelling. The only evidence they have offered of any pecuniary loss resulting from the Bank's alleged misrepresentation is that the VA,

3

upon hearing of the Northeast Laboratory test result, canceled its loan guarantee and thereby precluded plaintiffs from being eligible to obtain a reduced rate VA refinancing loan.

Pursuant to a Supplemental Statement of Facts submitted by Peoples Heritage without objection by plaintiffs, it is also undisputed that the water in the Soldier Pond residence was retested on July 25, 2000 and that this test revealed no detectable level of lead in the drinking water at the residence.

Given the above facts, it is somewhat puzzling why the case continues to be litigated. Plaintiffs, however, appear to argue that even if there was no detectable lead in the water as of July 2000 -- and presumably regardless of whether there was in fact any detectable lead in the water at the time of the closing -- the existence of an unsatisfactory test result (or an ambiguous and at least potentially unsatisfactory test result) was itself a fact that was the subject of an affirmative misrepresentation by the Bank at the time of the closing. On this issue plaintiffs are correct. In order to proceed with their claims of fraudulent and negligent misrepresentation and their claim for a violation of the Maine Unfair Trade Practices Act, however, the Browns also have to demonstrate a disputed issue for trial on the issue of whether they have suffered any pecuniary or economic loss as a result of the Bank's actions. See Tungate v. MacLean Stevens Studios, Inc., 1998 ME 162 ¶ 13, 714 A.2d 792, 797-98 (Maine Unfair Trade Practices Act); Brae Asset Fund L.P. v. Adam, 661 A.2d 1137, 1140 (Me. 1995) (negligent misrepresentation); Jourdain v. Dineen, 527 A.2d 1304, 1307 (Me. 1987) (fraud).

4

In this case the Browns cannot do this for two reasons. First, the Browns have not disputed that there was no contingency in the purchase and sale agreement regarding the quality or potability of the water. Peoples Rule 7(d) Statement ¶ 7. Even if the unsatisfactory or potentially unsatisfactory test for lead had been disclosed, therefore, the Browns would have been obligated to go ahead with the purchase and would have ended up in an identical position to the one in which they found themselves after the closing -- as the owners of a dwelling with an ambiguous and potentially unsatisfactory test result for lead. Second, the only pecuniary loss that the Browns have alleged -- that "we cannot get VA rates if we refinance the loan", Philip Brown Aff. ¶ 14; Karen Brown Aff. ¶ 13 -- is too contingent and hypothetical to allow them to proceed. A potential but as yet unrealized economic loss is not sufficient. Absent evidence that they have in fact suffered quantifiable economic harm by reason of the loss of the VA rate, the Browns have presented an opposition to summary judgment that, if presented at trial, would not allow them to surmount a motion for judgment as a matter of law. Accordingly, summary judgment is granted for the defendants on the Browns' claims for fraudulent and negligent misrepresentation and for violation of the Unfair Trade Practices Act.[2]

The only remaining claim is the Browns' claim for breach of contract, which fails because they have offered no evidence generating a triable issue as to whether

---

[2] For this reason the court does not reach Peoples's alternative argument that its conduct was also exempt from the Unfair Trade Practices Act under 5 M.R.S.A. § 208(1) (1989) and First of Maine Commodities v. Dube, 534 A.2d 1298, 1302 (Me. 1987).

the Bank had a contractual obligation to provide them with water test results. Summary judgment is therefore granted dismissing the complaint.

The clerk is directed to incorporate this order into the docket by reference pursuant to Rule 79(a).

Dated: December _28_ , 2000

Thomas D. Warren
Justice, Superior Court

Date Filed ___8-12-99___ ___Cumberland___ Docket No. ___CV99-461___

County

Action ___Damages___

Philip, Karen, & Andrew Brown

People's Heritage Bank
Carolyn Plourde

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Steven Lyman, Esq .  947-6514 | William Plouffe Esq. 772-1941 |
| 96 Harlow St. | PO BOX 9781         (BOTH)(Peoples) |
| Bangor, ME 04401 | Portland, ME 04104 |
| | |
| | RICHARD CURRIER, ESQ. 764-4193 (Plourde) |
| | 505 MAIN STREET |
| | PRESQUE ISLE, MAINE 04769 |
| | Deirdre M. SMith, ESC.   (People's) |
| Date of | POBox 9781 Portland ME 04104 |
| Entry | |

1999