# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2704

ECO MANUFACTURING LLC,

Plaintiff-Appellee,

v.

HONEYWELL INTERNATIONAL INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:03-CV-0170-DFH—**David F. Hamilton**, Judge.

_____

ARGUED SEPTEMBER 4, 2003—DECIDED DECEMBER 31, 2003

_____


Before FLAUM, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge. Eco Manufacturing proposes to make a thermostat similar in appearance to Honeywell's well-known circular, convex model with a round dial. Honeywell's model (which it calls "The Round") is on the left, Eco's on the right:

After receiving Honeywell's demand that it cease and desist, Eco filed this action seeking a declaratory judgment that its product would not infringe Honeywell's intellectual-property rights. Honeywell's round thermostat formerly was protected by two patents—a utility patent (No. 2,394,920) that lasted between 1946 and 1963, and a design patent (No. D176,657) that expired in 1970. Honeywell then sought a trademark registration for the shape of this product. The Patent and Trademark Office denied that application, concluding that the shape is functional and thus cannot serve as a trademark. *In re Honeywell Inc.*, 187 U.S.P.Q. 576 (T.T.A.B. 1975), affirmed, 532 F.2d 180 (C.C.P.A. 1976). Honeywell tried again a decade later and fared better. This time the agency ruled in its favor, *In re Honeywell Inc.*, 8 U.S.P.Q. 2d 1600 (T.T.A.B. 1988), and allowed the registration to be published for opposition. Emerson Electric objected; before this was resolved, however, Emerson and Honeywell reached a settlement and the mark's registration became final in 1990. It is this registration (No. 1,622,108) that, according to Honeywell, prevents any other firm from selling a round thermostat as long as Honeywell continues to make and sell its own product.

Honeywell filed a counterclaim seeking equitable relief. This appeal is from the district court's order declining to issue a preliminary injunction that would block Eco from bringing its product to market. 2003 U.S. Dist. LEXIS 11384 (S.D. Ind. June 20, 2003). Like the Trademark Trial and Appeal Board in 1975, the district court concluded that the shape of Honeywell's thermostat is functional—or, to be precise, that the likelihood of such a finding after a trial on the merits is sufficiently high, and damages are sufficiently easy to calculate if Honeywell turns out to win in the end, that Eco should be allowed to sell its competing product while the litigation proceeds. A product's appearance (often called its "trade dress") can serve as a trademark to the extent that design identifies the product's maker. See 15 U.S.C. §1127; *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000); *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159 (1995); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *W.T. Rogers Co. v. Keene*, 778 F.2d 334 (7th Cir. 1985). But a functional aspect of the design cannot be trademarked, even if it also (at least before competition breaks out) identifies the product's source. In the district court's view, *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), treats the grant of a utility patent as showing that the patented feature is functional. After the patent expires, the covered elements of the design are available to all. See *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964); *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111 (1938). Cf. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 123 S. Ct. 2041 (2003). Only "arbitrary, incidental, or ornamental aspects" (*TrafFix*, 532 U.S. at 34) of the patented product remain available for trademark use, the district court concluded, and the circular shape of Honeywell's thermostat is not just filigree. A spherical section is no more usable as a trademark than a cube or tetrahedron would be.

Honeywell's lead argument in this court is that it does not matter whether, or to what extent, the thermostat's shape is functional. That is so, Honeywell submits, because the trademark registration became incontestable in 1996, before Eco brought a competing product to market. Once a mark has been used for five years following registration, it becomes "incontestable". 15 U.S.C. §1065. Incontestability is "conclusive evidence of the validity of the registered mark and . . . the registrant's exclusive right" to use the mark in commerce. 15 U.S.C. §1115(b). See *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985).

The words "incontestable" and "exclusive" sound more impressive than the legal rights that the Lanham Act actually conveys, however. Section 1065 says that even "incontestable" marks must yield to prior users, and that the protection dissipates if the mark becomes generic. Moreover, and more to the point, §1065 says that a claim based on an incontestable mark may be defeated "on a ground for which application to cancel may be filed at any time under paragraphs (3) and (5) of section 1064 of this title". Section 1064(3) provides that a mark may be cancelled if it is, or becomes, functional. Thus incontestability does not avoid the question whether the thermostat's round shape is functional.

As Honeywell sees things, however, resort to the functionality proviso in §1064(3) is anachronistic. Congress added that particular language to the Lanham Act in 1998, two years after registration No. 1,622,108 passed the five- year mark that made it incontestable. See §201(b) of Pub. L. 105-330, 112 Stat. 3064 (effective Oct. 30, 1998). To apply a 1998 law to a mark that became incontestable in 1996 would be retroactive, Honeywell insists. New legislation is presumptively non-retroactive, see *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and Congress did not designate §201(b) as one of those rare enactments with retroactive effect.

This line of argument assumes that recognition of a functionality defense changed the law. Courts that had addressed the subject before 1998 were divided on the question whether functionality was a ground of cancellation despite its absence from the statutory text. Compare *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863 (8th Cir. 1994) (yes), with *Shakespeare Co. v. Silstar Corp.*, 9 F.3d 1091 (4th Cir. 1993) (no). The Supreme Court had not spoken—though it later, in *TrafFix*, raised the possibility that functionally is a constitutionally *required* limitation on trade dress protection, lest patent protection effectively be of unlimited duration. 532 U.S at 35. See also *Shakespeare*, 9 F.3d at 1099 (Niemeyer, J., dissenting). (Because patent law prohibits any unauthorized manufacture or use of the patented product, the product's shape necessarily will denote its origin while the patent lasts; and if this link between form and origin in turn creates trademark protection, then the patent's term lasts indefinitely.) To the extent that Congress codified rather than changed the governing rules, no retroactivity issue arises. We need not decide what the pre-1998 law required, however, because Honeywell misconceives what it means for a statute to be retroactive.

A law is retroactive when it alters the legal consequences of completed acts. See *Jahn v. 1-800-FLOWERS.com, Inc.*, 284 F.3d 807 (7th Cir. 2002). Changing the rules governing future behavior, by contrast, is a prospective application. This is why, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf*, 511 U.S. at 273. Honeywell does not want damages or any other remedy on account of conduct that predated Pub. L. 105-330. It wants prospective relief. Applying the 1998 law to Eco's conduct in 2003 and beyond is entirely prospective. Honeywell invokes the language of "vested rights," but statutes are malleable. All Honeywell ever has had to go on is a statutory rule; it

did not have a contract or a license or a judgment—and even a judgment may be modified prospectively when the law underlying it is amended. Compare *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) (judgments specifying the consequences of past conduct are unalterable), with *Miller v. French*, 530 U.S. 327, 341-50 (2000) (prospective relief may change as statutory foundation changes), and *Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992) (same). Shortly after *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), Congress changed the statute of limitations to reopen the opportunity to litigate certain securities claims (see 15 U.S.C. §78aa-1); and, though the Court held in *Plaut* that this change could not be applied to cases that had been finally dismissed before the amendment, it made clear the propriety of applying the law to litigation in progress or yet to be commenced, even though this meant that some claims were revived after the (original) statute of limitations had run. Likewise Congress could repeal the Lanham Act without infringing anyone's rights, or abolish the difference between incontestable and other marks, or increase to 25 years the time before a mark has the benefits of incontestability. The actual change worked by §201(b) of Pub. L. 105-330 was more modest, and as we have stressed may not have been a change at all.

Thus we arrive at the question whether the shape of Honeywell's thermostat is so clearly non-functional that the district judge abused his discretion by failing to enjoin Eco's competing model. We put the question this way because, on an appeal from the denial of interlocutory relief, appellate review is deferential. The district court was on solid ground to observe that, after *TrafFix*,

> [a] utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong

> evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection. Where the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

523 U.S. at 29-30. Because Honeywell bears a "heavy burden," it is hard to say at this interlocutory stage that the district judge abused his discretion in finding that the burden had not been discharged.

This is not to say that it would be impossible for Honeywell to carry its burden. *TrafFix* gave "an ornamental, incidental, or arbitrary aspect of the device" as a for-instance, and not as an exclusive means to show non-functionality. The hood ornament on a Mercedes, or the four linked rings on an Audi's grille, would exemplify "an ornamental, incidental, or arbitrary aspect of the device" that could survive as a trademark even if they once had been included within a patented part of the auto. Honeywell suggests a different way: Technological change. The transistor was not invented until 1947, the year after Honeywell's utility patent issued. The innards of "The Round" were a complex electro-mechanical linkage. The circular casing and dial may have been related in a functional way to the operating parts. Today many thermostats are solid-state devices controlled by integrated circuits equivalent to thousands of transistors; Eco's model even dispenses with mercury as an element of the temperature sensor. Thus what was once functional may half a century later be ornamental. Passage of time diminishes a utility patent's significance. And there are plenty of other ways to

package the necessary controls, as Honeywell reminds us with this illustration:

Eco responds that "The Round" may be functional simply because some consumers prefer its look, and portions of the district court's opinion imply agreement with this submission. Aesthetic appeal *can* be functional; often we value products for their looks. See *Qualitex*, 514 U.S. at 169-70. Yet an understanding of "aesthetic functionality" as broad as Eco's would destroy protection of trade dress, as we remarked in *Keene*. It would always be possible to show that *some* consumers like the item's appearance; then the corner jewelry store could emulate the distinctive Tiffany blue box, which would lose its ability to identify origin. "Beauty lies in the eye of the beholder" therefore cannot by itself establish functionality of trade dress. Perhaps, however, a more complete record may show that consumers'

desire for circular thermostats comes from more than familiarity with a shape that Honeywell made famous. After all, Honeywell did not invent the circle (or the wheel).

It is not hard to think of three ways in which a round thermostat could be functional, at least in principle. First, rectangular objects may clash with other architectural or decorative choices. Just as a building designed by Ludwig Mies van der Rohe demands controls made from regular or semi-regular polyhedra, so a building designed by Frank Gehry could not tolerate boxy controls. Second, round thermostats (and other controls) may reduce injuries, especially to children, caused by running into protruding sharp corners. Third, people with arthritis or other disabilities may find it easier to set the temperature by turning a large dial (or the entire outer casing of the device) than by moving a slider or pushing buttons on boxes. The record does not contain much along any of these lines, but they are sufficiently plausible to disable Honeywell from prevailing at this preliminary stage, given the burden it bears as a result of the expired patents. Although the three possibilities we have mentioned do not show that roundness is "essential" to a thermostat, that's not required. *TrafFix* rejected an equation of functionality with necessity; it is enough that the design be useful. The Justices told us that a feature is functional if it is essential to the design *or* it affects the article's price or quality. 532 U.S. at 33.

Thus the district court did not abuse its discretion in holding that Eco may go forward with a round thermostat—at its own risk, of course, should the decision come out otherwise on the merits. Although we have not endorsed all of the district court's legal analysis, it would be pointless to remand for another hearing on interlocutory relief. The case should proceed expeditiously to final decision; another "preliminary" round would waste everyone's time. It would be especially inappropriate to direct the district judge to

issue a preliminary injunction when issues other than functionality remain to be addressed. Eco contends, for example, that Honeywell bamboozled the Patent and Trademark Office when seeking registration during the 1980s, and material deceit would scotch this enforcement action whether or not the trade dress is functional. We do not express any view on that issue, or any ultimate view about functionality; it is enough to say that the record compiled to date adequately supports the district judge's interlocutory decision.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*