2009 ME 69

**John McKINNON et al.**

v.

**HONEYWELL INTERNATIONAL, INC.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2007.
Decided: July 16, 2009.

Christine M. Craig, Esq. (orally), Shaheen & Gordon, P.A., Dover, NH, for John McKinnon.

Seth W. Brewster, Esq., Verrill Dana LLP, Portland, ME, Richard G. Parker, Esq. (orally), O'Melveny & Myers LLP, Washington, D.C., for Honeywell International Inc.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

CLIFFORD, J.

[¶ 1] John McKinnon appeals from a summary judgment in favor of Honeywell International, Inc. entered in the Superior Court (York County, *Fritzsche, J.*) on his putative class action complaint alleging that Honeywell violated the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S. §§ 205–A to 214 (2008), and Maine's antitrust statute governing monopolies and profiteering, 10 M.R.S. §§ 1101–1110 (2008), by preventing competition for, and misrepresenting trademark status on, its circular thermostats. Among other contentions, McKinnon challenges the court's conclusion that the applicable statute of limitations bars his claim and that his claim fails to state a cognizable injury. Because the portion of McKinnon's claim based on the purchase of thermostats in Maine in 1986 is barred by the statute of limitations, and the remainder of his claim, based on his single purchase of a thermostat in New Hampshire, fails to demonstrate sufficient injury or damage to support his unfair trade practices and antitrust claims, we affirm the judgment.

## I. BACKGROUND

[¶ 2] McKinnon's complaint, as amended, alleges that Honeywell "engaged in illegal, unfair, deceptive and unlawfully monopolistic business practices in connection with the sale of its circular thermostats in Maine." Specifically, McKinnon alleges that Honeywell prevented competition in the circular thermostat market by misrepresenting that it had a proper trademark on such thermostats and threatening rival thermostat manufacturers with litigation, and that this anti-competitive activity resulted in higher prices, causing consumers in Maine, such as McKinnon, to pay inflated amounts for the thermostats.

[¶ 3] In June of 2006, Honeywell moved for a summary judgment on grounds that McKinnon's claim was barred by the statute of limitations, and that McKinnon had failed to provide the court with sufficient evidence of a cognizable injury. Viewing the facts presented in the parties' M.R. Civ. P. 56(h) statements in the light most favorable to McKinnon, as the nonmoving party, *see Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126, the summary judgment record contains the following evidence.

[¶ 4] McKinnon purchased a total of four circular Honeywell thermostats, none directly from Honeywell. The first three thermostats, McKinnon believes, were bought in 1986, most likely from Garrity Lumber in York. McKinnon alleges that he purchased a fourth thermostat sometime around 2001 from Home Depot in Portsmouth, New Hampshire. Home Depot stores in New Hampshire advertise in Maine. McKinnon does not remember precisely how much he paid for any of the four thermostats, and is able to give only estimates. His best estimate is that he paid between fifteen and twenty dollars for each of the three thermostats purchased in Maine in 1986. McKinnon's recollection of the New Hampshire purchase is vague as well, but his best estimate is that he paid approximately twenty-six to twenty-seven dollars, "give or take $5," for the thermostat purchased there. He does not recall, however, whether any of the thermostats were purchased on sale, were subject to discounts, or benefited from any rebates.

He has no receipts or sales slips for any of his purchases. At the times he purchased the thermostats, he believed he was paying fair market prices for them.

[¶ 5] McKinnon learned about Honeywell's alleged antitrust activities around August or September of 2004, following a separate trademark suit brought in federal court. He filed this action in the Superior Court on November 12, 2004.[1] McKinnon alleges that, as a result of Honeywell's activities, he and other members of the putative class paid artificially inflated prices for the thermostats. In his statement of material facts filed in opposition to Honeywell's motion for a summary judgment, McKinnon substantially relies on the facts of the federal case as set out in the opinion of the United States District Court for the Southern District of Indiana, *Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 295 F.Supp.2d 854 (S.D.Ind.2003), *aff'd, Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 357 F.3d 649 (7th Cir.2003). Those facts are as follows:[2] Honeywell originally obtained a patent on the round thermostat in 1946 based on the utility of the circular shape; that patent expired in 1963. Meanwhile, in 1956, Honeywell also obtained a design patent for the appearance of the round thermostat. In 1968, when the design patent was approaching its expiration, Honeywell filed an application to secure a trademark for the circular shape, but the application was ultimately denied because the circular shape was deemed functional and therefore not subject to trademark protection.

[¶ 6] Even though its trademark application was denied, Honeywell threatened other companies attempting to manufacture and sell circular thermostats with litigation, claiming that to do so would violate the trademark rights owned by Honeywell. Honeywell eventually purchased one of the competing companies and discontinued that company's manufacture of the circular thermostat. In 1986, Honeywell filed another application with the Patent and Trademark Office for a trademark, in which it misrepresented that there were no other competitors seeking to use a circular design and that it had not entered into any settlement agreements to prevent them from doing so. Honeywell was granted a trademark by the Patent and Trademark Office in 1988.

[¶ 7] Another company, Eco Manufacturing, planned to manufacture a circular thermostat, and filed the federal action in the United States District Court for the Southern District of Indiana, seeking a declaration that its circular thermostat would not infringe on Honeywell's trademark. Honeywell sought a preliminary injunction to prevent Eco from manufacturing that product. The court declined to issue a preliminary injunction to prevent Eco from manufacturing its circular thermostat based on its finding that, during the period in which Honeywell's circular thermostat was not protected by either a patent or a trademark, Honeywell may have engaged in misleading acts to suppress competition for such thermostats.[3] *Eco Mfg.*, 295 F.Supp.2d at 886–87.

1. In February of 2005, the case was removed to the United States District Court for the District of Maine, and then to a multidistrict litigation panel. It was remanded back to the Superior Court in September of 2005.

2. Although McKinnon makes reference to numerous facts found by the federal court in his statement of material facts, he does not cite to record evidence in the present case. Before

the trial court, Honeywell disputed these facts as not properly before the court. Honeywell also contends that in this limited motion for a summary judgment, even assuming that the facts from the federal case are true, summary judgment is still appropriate.

3. On appeal, the United States Court of Appeals for the Seventh Circuit affirmed the denial of injunctive relief to Honeywell, but

[¶ 8] Following a consolidated hearing on both McKinnon's motion for class certification, *see* M.R. Civ. P. 23, and Honeywell's motion for a summary judgment, the Superior Court entered a summary judgment in favor of Honeywell. The court first concluded that McKinnon's complaint was barred by the applicable statute of limitations, and that the statute of limitations was not tolled, or extended, by either fraudulent concealment or the continuing violations doctrine. The court further concluded that McKinnon did not and could not establish that he had suffered any economic injury, as is required by 5 M.R.S. § 213(1) and 10 M.R.S. § 1104(1), because he presented insufficient proof that he was, in fact, charged a supra-competitive price. Accordingly, the court entered a summary judgment in favor of Honeywell and dismissed, as moot, McKinnon's motion for class certification. McKinnon's subsequent motion for further findings and for reconsideration was dismissed by the court as untimely and, even if considered timely, was denied. McKinnon then filed this appeal.

## II. DISCUSSION

[¶ 9] McKinnon contends that the court erred in concluding that his cause of action is time-barred by the statute of limitations. "Whether a claim is barred by the statute of limitations is a question of law, reviewed de novo." *Farnum v. Oral Surgery Assocs.*, 2007 ME 140, ¶ 7, 933 A.2d 1267, 1270 (quotation marks omitted).

A. Statute of Limitations as to the Maine Purchases

[¶ 10] Because the purchases of three thermostats were made in Maine by a Maine resident, there is no dispute that

expressed no opinion as to whether Honeywell misled the Patent and Trademark Office in its trademark application. *Eco Mfg. LLC v.*

Maine law, including Maine's statute of limitations, applies to those purchases. The limitations period in Maine for both of McKinnon's causes of action—the antitrust claim and the UTPA claim—is six years: "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues." 14 M.R.S. § 752 (2008).

[¶ 11] McKinnon's compliance with Maine's six-year statute of limitations therefore depends on when his cause of action accrued. In analyzing accrual, we look to both state and federal antitrust law for guidance in the interpretation of the Maine antitrust statute, including the accrual of an antitrust claim. *See* 5 M.R.S. § 207(1) ("It is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) of the Federal Trade Commission Act . . . ."); *see also Tungate v. MacLean–Stevens Studios, Inc.*, 1998 ME 162, ¶ 9, 714 A.2d 792, 797. We have defined the time of accrual as "the time the plaintiff sustains a judicially cognizable injury." *Chiapetta v. Clark Assocs.*, 521 A.2d 697, 699 (Me.1987). Similarly, the United States Court of Appeals for the Fourth Circuit has stated:

> Accrual of a private antitrust cause of action for purposes of the statute of limitations occurs when defendants commit an act that causes economic harm to a plaintiff. Even when defendants continue to perform overt acts of furtherance of an antitrust conspiracy within the statutory period, plaintiffs' injuries also must fall within the limitations period in order not to be time-barred.

*Honeywell Int'l, Inc.*, 357 F.3d 649, 655 (7th Cir.2003). The case was subsequently settled.

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir.1987) (citation omitted).

[¶ 12] In accordance with this standard, the injury McKinnon purports to have sustained as to the three Maine purchases occurred in 1986, when McKinnon alleges that he overpaid for the three circular thermostats. Thus, pursuant to the plain language of 14 M.R.S. § 752, the six-year limitations period on McKinnon's claim commenced in 1986 and expired in 1992. McKinnon did not file his complaint until 2004, however, eighteen years after his purchases and twelve years beyond the expiration of Maine's statute of limitations.

[¶ 13] McKinnon does not dispute these dates, but contends that Maine's six-year statute of limitations is tolled pursuant to one or both of two exceptions to the expiration of the limitations period: the continuing violations doctrine and the fraudulent concealment exception.

[¶ 14] The United States Supreme Court has applied the continuing violations doctrine in the context of federal antitrust law, i.e., the Clayton Act, as follows:

> Antitrust law provides that, in the case of a continuing violation, say a price fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, e.g., each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (quotation marks and emphasis omitted). Although we have discussed the possible applicability of the doctrine in the context of employment discrimination cases, *see*

*LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶¶ 10–16, 909 A.2d 629, 633–35, we have never adopted the continuing violations doctrine as a means of tolling the statute of limitations, *cf. Batchelder v. Realty Resources Hospitality, LLC*, 2007 ME 17, ¶¶ 12–25, 914 A.2d 1116, 1121–25 (applying Maine's procedural requirements to claims filed pursuant to a state statute modeled after a federal statute). We decline to adopt the continuing violations doctrine in this case arising from a 1986 occurrence, and in which the statute of limitations period expired in 1992, nine years prior to McKinnon's subsequent purchase of a thermostat in New Hampshire. The New Hampshire purchase did not revive the cause of action based on the 1986 purchases in Maine pursuant to the continuing violations doctrine.

[¶ 15] Regardless of when his cause of action initially accrued, McKinnon contends alternatively that the statutory limitations period should be tolled pursuant to 14 M.R.S. § 859 (2008) because this action is based on fraud through Honeywell's fraudulent concealment of facts. Section 859 provides:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action, except as provided in section 3580.[4]

14 M.R.S. § 859. McKinnon does not argue on appeal that Honeywell's antitrust actions were fraudulent per se. Thus, in order for McKinnon to claim the benefit of section 859 based on fraudulent concealment, he must establish either: (1) that

---

4. Title 14 M.R.S. § 3580 (2008) regards

fraudulent transfers, and does not apply here.

Honeywell actively concealed material facts from him and that he relied on Honeywell's acts and statements to his detriment; or (2) "that a special relationship existed between the parties that imposed a duty to disclose the cause of action, and the failure of defendants to honor that duty." *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 22, 819 A.2d 1014, 1026 (quotations marks omitted).

[¶ 16] The Superior Court correctly determined that McKinnon has failed to present sufficient facts to prove fraudulent concealment, particularly given that many of the facts relevant to fraudulent concealment have always been publicly available in the documents filed by Honeywell with the Patent and Trademark Office in 1968 and 1986.[5] *See* 37 C.F.R. § 2.27(d) (2006). McKinnon has not demonstrated that Honeywell has concealed a cause of action from McKinnon within the meaning of 14 M.R.S. § 859. We are also not convinced, contrary to McKinnon's contention, that the doctrine of a "self-concealing fraud," even if it were adopted in Maine, is adequately established in the record.

B. Sufficiency of McKinnon's Claim as to the New Hampshire Purchase

[¶ 17] McKinnon has brought this action pursuant to Maine statute, namely, the UTPA, 5 M.R.S. §§ 205–A to 214, and Maine's antitrust statute governing monopolies and profiteering, 10 M.R.S. §§ 1101–1110. Thus the claim based on McKinnon's New Hampshire purchase in 2001 clearly falls within Maine's six-year statute of limitations period.[6] *See* 14 M.R.S. § 752.

[¶ 18] Because of the overall speculative nature of his claim, however, McKinnon's action against Honeywell cannot proceed to class certification in the trial court. The evidence McKinnon offers is weak, inconsistent, and vague. More particularly, McKinnon testified that he could not recall the month or even the year of his New Hampshire purchase with any degree of certainty. He was unsure of the address of the store from which he made the purchase. Most importantly, McKinnon cannot give a specific price for his New Hampshire purchase, and he has no receipt, sales slip, invoice, or other evidence of what he actually paid. His only evidence of cost is his vague recollection as reflected in his testimony that what he paid would be a guess; that it could be off by four or five dollars, that his best recollection is that he paid twenty-six to twenty-seven dollars, with five dollars' leeway either way; and that he "can't remember" for sure. Moreover, McKinnon does not recall if the thermostat in New Hampshire was purchased on sale, if he benefited from a contractor's discount, if the sale was part of a promotion, or if it generated a rebate from the manufacturer.

[¶ 19] Maine's antitrust act provides that a plaintiff must prove injury or damage before the plaintiff can recover. 10 M.R.S. § 1104(1). Federal antitrust law, to which Maine looks to construe its antitrust statute, likewise requires proof of real injury. 15 U.S.C.S. § 15(a) (Lexis-Nexis 2008); *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 317 (5th Cir.1978). To prove his injury pursuant to the antitrust

---

5. Honeywell's 1968 trademark application was denied. Its 1986 trademark application was approved in 1988. In the 1986 application proceedings, allegations were made that Honeywell made threats to competitors.

6. New Hampshire law permits the filing of indirect purchaser actions like that of McKinnon pursuant to New Hampshire's Consumer Protection Act, N.H.Rev.Stat. Ann. § 358–A:1 to:13 (1995 & Supp.2006). *LaChance v. U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 931 A.2d 571, 575–81 (2007).

statute, McKinnon must demonstrate that he paid an inflated price for his New Hampshire purchase. Such damages may be proved in the aggregate by demonstrating that Honeywell, through its anti-competitive practices, charged more for its thermostats than it could have charged in a fully competitive market, and that those higher prices were passed on through the retail outlets to indirect purchasers such as McKinnon. *See Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*, 522 F.3d 6, 22 (1st Cir. 2008). Nevertheless, it is difficult to prove an inflated price was paid for a product if one cannot demonstrate, with a reasonable degree of certainty, the price actually paid. *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

[¶ 20] In 2008, the United States Court of Appeals for the First Circuit recognized that Maine's antitrust law, 10 M.R.S. § 1104, specifically permits recovery for an indirect injury, but noted that the Maine trial courts have held that in seeking damages, indirect purchasers are required to present proof that they paid higher prices as a result of the antitrust activity, as opposed to the possibility that increases in price were absorbed at the retail level. *Brown*, 522 F.3d at 22. Those trial court cases have correctly construed Maine law as requiring proof that higher prices were paid as a result of the antitrust activity.

[¶ 21] Maine's UTPA also requires that a plaintiff suffer "loss of money or property" before bringing a private action to recover. 5 M.R.S. § 213(1). Its primary purpose is to compensate an injured plaintiff; it is not intended to be used to harass. *Bartner v. Carter*, 405 A.2d 194, 201–02 (Me.1979). Further, the injury suffered must be substantial. *Suminski v. Me. Appliance Warehouse, Inc.*, 602 A.2d 1173, 1174–75 n. 1 (Me.1992).

The substantial injury requirement is a limitation on the use of the UTPA for a private cause of action. *Bartner*, 405 A.2d at 201–02. "The plain language of the statute denies relief for plaintiffs who do not demonstrate injury from the alleged deceptive or unfair practice." *Tungate*, 1998 ME 162, ¶ 13, 714 A.2d at 798. Likewise, the First Circuit also has correctly noted that Maine's UTPA allows recovery by an indirect purchaser, but that the injury would have to be proved and "is not presumed." *Brown*, 522 F.3d at 22.

[¶ 22] McKinnon contends that the summary judgment was improperly entered against him. He argues that the evidence of his purchase combined with the evidence from his expert, Dr. Roger Noll, is sufficient to support a class action claim against Honeywell. His expert testified that Honeywell, through its monopolistic practices, barred competition resulting in consumers paying higher prices. Noll asserts that he can show that McKinnon was injured because he was overcharged for a thermostat, and that the injury is common to the class. McKinnon seeks to certify the class on this basis.

[¶ 23] In its decision, the Superior Court recognized that McKinnon *could* have been overcharged for the thermostat, but correctly concluded that the evidence was insufficient to demonstrate what price McKinnon *did* pay for his purchase, thereby precluding his effort to show that he was overcharged for that thermostat. Although Honeywell is entitled to a summary judgment in its favor based on the inadequacies of McKinnon's alleged evidence of injury, and the court correctly dismissed McKinnon's motion to certify the class as moot, the court did not determine that the entire putative class would not be able to demonstrate sufficient injury. We do not opine as to whether they could present sufficient evidence of injury within the ap-

plicable limitations period. McKinnon, however, is not a proper representative of the class because he presents insufficient evidence of injury as a matter of law.

The entry is:

Judgment affirmed.

SILVER, J., with whom LEVY, J., joins, concurring in part and dissenting in part.

[¶ 24] The Court is putting the cart before the horse. Better practice requires the motion for class certification to be heard before the motion for summary judgment. I respectfully dissent from the Court's opinion because McKinnon's claim, to the extent it is based on his 2001 purchase, should not be characterized as speculative before the conclusion of discovery and before consideration of McKinnon's motion for class certification.

[¶ 25] McKinnon is entitled to have the issue of antitrust injury and damages addressed by motion for class certification, pursuant to M.R. Civ. P. 23. Also, McKinnon is entitled to present his expert's opinion that much of the proof of injury and damages is common to the class. If McKinnon's expert can convince the trial court that common proof is sufficient, McKinnon's lack of any receipt for his purchase may not impede his claim or his proposed status as representative of the class. McKinnon is entitled to make his best case to counter Honeywell's contentions about injury and damages. Because discovery was not complete at the time of the summary judgment motion and because Honeywell did not assert all of the facts on summary judgment that would be addressed in the motion for class certification, McKinnon has been deprived of the opportunity to present a complete picture on the issues of injury and damages.

[¶ 26] By denying McKinnon a decision on his motion for class certification, the Court (1) deprives McKinnon of the chance to demonstrate that he can meet class certification requirements pursuant to the standards applicable to those requirements, and (2) needlessly burdens other potential class action representatives by requiring that they initiate a new lawsuit in order to vindicate their antitrust rights. I address each of these in turn.

[¶ 27] We have very little precedent on class action certification requirements. However, the First Circuit has urged district courts to use caution when considering a motion for summary judgment prior to a motion for class certification. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 n. 7 (1st Cir.2000). "Compliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary-judgment motion." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1798 (3d ed. 2005).

[¶ 28] In *Brown*, a class action involving alleged illegal stifling of competition in the automotive industry, the First Circuit encountered the same type of challenge that Honeywell raises: a dispute over whether an antitrust injury occurred and what proof can be offered to demonstrate injury and damages. 522 F.3d at 19. Although the First Circuit vacated the District Court's orders granting class certification, it remanded the case for further evaluation of class certification issues pertaining to damages, *id.* at 9, 29–30, thus affirming that the motion for class certification is the appropriate procedural vehicle for addressing challenges to proof.

[¶ 29] A comparison of the Court's decision on Honeywell's motion for summary judgment with the First Circuit's decision in *Brown* demonstrates why a summary judgment against McKinnon is premature. The facts in *Brown* are closely analogous

to those alleged by McKinnon in that both cases involve indirect purchasers and challenges relating to proof of antitrust injury and damages. *Id.* at 17–23. The plaintiffs in *Brown* did not purchase directly from the defendant automotive manufacturers, but rather from dealerships, and for this reason are described as indirect purchasers. *Id.* at 8, 10. They allege that the manufacturers committed antitrust violations by blocking lower-priced imports from Canada, resulting in higher prices being passed through dealers to consumers. *Id.* at 8, 21–22. Likewise, McKinnon is an indirect purchaser who alleges that an antitrust violation by Honeywell resulted in higher prices for consumers. Under Maine law, indirect purchasers have the right to sue for antitrust injuries. 10 M.R.S. § 1104(1) (2008).

[¶ 30] McKinnon, like the plaintiffs in *Brown,* seeks class certification. Although McKinnon's request for class certification is governed by M.R. Civ. P. 23, rather than the federal counterpart, Fed.R.Civ.P. 23, applicable in *Brown,* these rules are virtually identical in all respects pertinent to this appeal.[7] Thus, *Brown* is persuasive authority on the application of M.R. Civ. P. 23. *See Millett v. Atl. Richfield Co.,* 2000 ME 178, ¶ 11, 760 A.2d 250, 253–54.

[¶ 31] Any plaintiff seeking class certification must demonstrate that the claim, the class, and the plaintiff seeking to represent the class meet several requirements:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

M.R. Civ. P. 23(a). Rule 23 sets forth additional requirements, including two pertinent to Honeywell's challenge: questions of law or fact common to the class must predominate over questions affecting only individual members, and a class action must be superior to other available methods for fair and efficient adjudication. M.R. Civ. P. 23(b)(3).

[¶ 32] *Brown* demonstrates that when the putative class consists of indirect purchasers alleging supra-competitive prices, an evaluation of the proof offered of antitrust injury and damages is central to class certification. 522 F.3d at 18–23. Proof of injury and damages is more complex when plaintiffs are indirect purchasers because they need to demonstrate that illegally obtained higher prices were passed on, through an intermediary dealership or retail store, to them. *Id.* at 22, 27. In *Brown,* the crux of the dispute was whether an indirect purchaser, at the class certification stage, must produce evidence of antitrust injury to each member of the class, or whether a showing of injury could be met through evidence that is common to the class:

> The real dispute revolved around whether common evidence could be used to prove the impact of the alleged conspiracy on U.S. consumers ("common impact") and any resulting damages ("common proof of damages").

*Id.* at 19. The First Circuit held that proof of antitrust injury may be determined by evidence that is common to the

---

7. There is one distinction worth noting, although it does not affect this appeal: M.R. Civ. P. 23(c)(1) permits conditional orders of class certification, whereas Fed.R.Civ.P. 23(c) was revised to remove this option. *Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.),* 522 F.3d 6, 26 & n. 27 (1st Cir.2008).

class, whereas the measure of damages may be determined by either common or individual proof:

> To establish an antitrust claim, plaintiffs typically must prove (1) a violation of the antitrust laws, (2) an injury they suffered as a result of that violation, and (3) an estimated measure of damages. For a class action to be appropriate, "plaintiffs need to demonstrate that common issues prevail as to [both] the existence of a conspiracy and the fact of injury." If these two elements are established by common proof, the measure of damages can sometimes be left to individual proof. . . .

*Id.* at 19 n. 18 (citation omitted) (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir.2005)).

[¶ 33] McKinnon offers expert testimony that the price charged to consumers of circular thermostats can be calculated based on common proof. In *Brown,* the First Circuit held that common proof may be sufficient, at the class certification stage, to demonstrate consumer-level impact for each class member:

> The plaintiffs might intend to use their damages model to prove both fact of damages and the measure of those damages. If so, the district court would need enough information to evaluate preliminarily whether the proposed model will be able to establish, without need for individual determinations for the many millions of potential class members, which consumers were impacted by the alleged antitrust violation and which were not.

*Id.* at 28. In order to recover under the Maine antitrust statute, 10 M.R.S. § 1104(1), and the Maine Unfair Trade Practices Act, 5 M.R.S. § 213(1) (2008), a plaintiff must have suffered a personal loss caused by the antitrust violation; injury is not presumed or inferred. *Brown,* 522

F.3d at 22. However, neither of these statutes requires a particular type of proof of loss, and neither statute precludes plaintiffs from offering common proof, provided it sufficiently demonstrates consumer-level injury to each member of the class.

[¶ 34] I express no opinion about the validity of the submissions by McKinnon's expert or whether this evidence would withstand an eventual motion for summary judgment. Nevertheless, McKinnon is entitled to have the expert's opinion evaluated in accordance with the standards that apply to motions for class certification. *See id.* at 20–22.

[¶ 35] Even if McKinnon is not able to produce any further evidence of the price he paid, Honeywell has failed to meet its burden on summary judgment to demonstrate that there is no genuine issue of material fact. The Massachusetts Superior Court denied Honeywell's motion for summary judgment on similar antitrust and unfair competition claims. *Fagan v. Honeywell Int'l, Inc.,* 04–4903, at 1 (Ma.Super. Ct., Suffolk Cty., Nov. 21, 2006) (*Garsh, J.*). The court held: "Notwithstanding the plaintiffs' failure to have records of their purchases in their possession and their inability to recall, to the precise penny, what they paid for the thermostats, the plaintiffs' representations during discovery combined with the opinions of their expert suffices to create a genuine issue of material fact." *Id.*

[¶ 36] McKinnon testified in his deposition that he paid twenty-six or twenty-seven dollars for the thermostat, give or take five dollars. Thus, he has presented proof that the minimum he paid was twenty-one dollars. If McKinnon can piece this pricing testimony together with all of the other elements necessary to a successful antitrust claim, he may be entitled to recover. The measure of his damages would be the difference between the hypothetical

price in a competitive market and the price McKinnon actually paid, assuming that no part of the higher price was absorbed by the retail store. McKinnon has presented sufficient evidence to generate a genuine issue of material fact with respect to damages. The current record provides no basis for granting a summary judgment to Honeywell.

[¶ 37] The summary judgment motion should not have been decided in advance of the motion for class certification. However, regardless of the order in which the court considered these motions, it should have permitted McKinnon's counsel to substitute another plaintiff prior to making its final decision in the case. *See Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir.2008); *Cowen v. Bank United of Texas*, 70 F.3d 937, 941 (7th Cir.1995). There is no reason to burden other potential class action representatives by requiring them to initiate a new lawsuit in order to vindicate their antitrust rights.

[¶ 38] For all of the above reasons, I dissent from Part B of the Court's opinion. I concur in Part A of the Court's opinion, which holds that the statute of limitations bars the claims that are based on the 1986 purchases. I would vacate the summary judgment as to the 2001 purchase and remand the case for consideration of the motion for class certification. I express no opinion regarding whether McKinnon's motion for class certification should be granted or whether, at some later stage, Honeywell might be entitled to a summary judgment.