STATE OF MAINE                                          SUPERIOR COURT

Cumberland, ss.


KOLBY SOUTHWICK

            Plaintiff

      v.                              Civil Action Docket No. CUMSC-CV-18-0399

HEALTH AFFILIATES MAINE, LLC

            Defendant

## ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

In this case, Plaintiff Kolby Southwick (Southwick) claims that her former

employer, Defendant Health Affiliates Maine, LLC (HAM), has violated Maine's

wage payment statutes by failing to pay her for all of her work as a HAM case

manager.

Southwick has filed a Motion for Class Certification proposing that the court

designate her as class representative for three certified classes of current and

former HAM case managers, described as follows:

> Travel Time Class: All current and former employees of Health Affiliates
> Maine that worked as case managers and were not paid for all travel time
>
> Paperwork Class: All current and former employees of Health Affiliates
> Maine LLC that worked as case managers and were not paid for all time
> completing required admin and/or client paperwork
>
> Kickback Class:  All current and former employees of Health Affiliates
> Maine LLC that worked as case managers and were required to use their
> personal vehicles for work and weren't properly reimbursed.

ATTORNEYS:
Peter Mancuso, Esq. & Andrew Schmidt, Esq. (for plaintiff)
Melissa Hewey, Esq. (for defendant)                    1

REC'D CUMB CLERKS OFC
SEP 30 '19 PM3:15

Plaintiff's [Proposed] Order Granting Plaintiff's Motion for Class Certification.

HAM opposes the Motion for Class Certification on multiple grounds, including the assertion that it has paid Southwick and all other HAM case managers in compliance with Maine's wage payment laws.

**Background**

According to the affidavit of its executive director, Andrea Krebs, HAM is a mental health and substance abuse agency that provides outpatient therapy, substance abuse counseling and case management services throughout Maine to recipients of MaineCare benefits (MaineCare being the State of Maine's Medicaid program). Response in Opposition to Plaintiff's Motion for Class Certification of Defendant Health Affiliates of Maine, LLC, Ex. 2, Affidavit of Andrea Krebs at ¶ 2-3 [Krebs Aff.].

The MaineCare program compensates HAM for each hour of case management services rendered to the client. Krebs Aff. ¶ 9. The compensation is measured in quarter-hour increments.

To enable a case manager's service to a client to be billable to MaineCare, the service obviously has to be rendered, meaning that the case manager has to travel to the client's location. Also, the hour of service to the client has to be documented in order for the service to be billable to MaineCare. Thus, in order for HAM to be able to bill an hour of service to MaineCare, a case manager has to

2

spend travel time and paperwork time, in addition to the time spent rendering the billable hour of service, in order for HAM to be able to bill the service to MaineCare.

However, MaineCare does not compensate HAM for a case manager's time spent traveling to or from the client appointment. Krebs Aff. ¶ 11. MaineCare does not compensate HAM for the case manager's time spent on the paperwork associated with documenting a client service so it can be billed to MaineCare.

HAM bases its compensation system for its case managers on MaineCare's compensation system for HAM. Krebs Aff. ¶ 12. HAM pays (and has paid) its case managers between $29 and $35 for each "Client Billable Hour." In addition, HAM pays a travel stipend of between $2.00 and $6.00 for each Client Billable Hour "depending on where the Case manager typically travels to meet with clients and how many Client Billable Hours are paid that week." *Id.* at 2.

HAM pays case managers a separate lower rate per hour of mandatory training and supervision.

HAM hired Kolby Southwick as a per diem case manager in November 2015. At the time she was hired, Southwick was provided with a one-page form setting forth the terms of her compensation "per client billable hour" and the requirements for generating a client billable hour, and signed it to signify her agreement with its terms. *See* Plaintiff's Brief in Support of Her Motion for Class Certification, Ex. 5 ("Client Billable Hour Requirements", signed by Plaintiff 11/5/15).

3

In pertinent part, the Client Billable Hour Requirements form signed by Plaintiff at the time she was hired reads:

> As a per diem employee, you are being paid $29 per client billable hour up to 40 hours per week ($35 per client billable hour for specialty populations). In addition, you will be paid $2 per billable hours [sic] for mileage expenses incurred. You will also be paid $15 per hour for mandatory supervision, administrative meetings and trainings.

*Id.*

In late 2016, Southwick raised the concern that she and the other case managers were not being paid for the travel time required in order to render service to the client or for the "paperwork time" associated with documenting the service so it could be billed to MaineCare. HAM did not agree with her concern, based on its definition of "client billable hour" as including travel time and paperwork time.

In January 2017, Southwick brought her concern to the Maine Department of Labor, which investigated. After the Department of Labor became involved, HAM started requiring its case managers to keep track of their actual hours.

Around the same time, in March 2017, HAM revised its written case manager compensation policy to be more specific about what time is covered by the $29/35 payment per client billable hour. However, HAM did not change the policy itself—the $29/35 payment was still meant to cover all work associated with a client billable hour, including travel time and paperwork time. The revised policy reads in pertinent part:

4

Billable Hours

We pay Case Managers $29.00 per hour billed to MaineCare ("Client Billable Hour") or $35.00 per Client Billable Hour if the client meets the Cultural program requirements. The rate we pay per Client Billable Hour is set at a level to reflect the work that goes into each Client Billable Hour. Pay for Client Billable Hours covers all hours spent in support of those hours, including time spent with the client (including face to face and collateral time), travel between client locations, completing the required paperwork, or any other work required in support of Client Billable Hours, whether or not such time is billable to MaineCare.

Health Affiliates Maine Case Manager Compensation Page 1 of 2 3/2017, attached as Exhibit B to Plaintiff's Motion for Class Certification

Despite that clarification, Southwick maintains that HAM's compensation policy still violates Maine law because it fails to compensate case managers for their travel time and paperwork time.

Southwick contends that the payment represents the hourly rate for a case manager's time spent rendering the billable service to the client, and does not cover travel time or paperwork time. She therefore contends that she (and the members of the proposed classes) are due additional compensation for the travel time and paperwork time. She also challenges the $2 compensation paid per client billable hour as inadequate and unlawful, and characterizes it as, in effect, as requiring case managers to "kickback" to HAM a portion of their compensation.

HAM's position is that, because the $29/35 payment per client billable hour covers all of the work needed to enable HAM to bill an hour of client service to

MaineCare, its compensation policy is, in substance, a piecework or flat rate compensation arrangement that pays the case manager for completing a task or unit of production.

HAM cites to federal regulations allowing an employer to compensate an employee on a "piecework" basis, as long as the employee agrees to be paid based on piecework rather than by the hour, and also as long as the piecework compensation equates to at least the applicable minimum wage for all hours actually worked. *See* Response in Opposition to Plaintiff's Motion for Class Certification of Defendant Health Affiliates of Maine at 10-12, *citing* 29 C.F.R. § 778.318(c) ("[I] it is permissible for the parties to agree that the pay the employees will earn at piece rates is intended to compensate them for all hours worked, the productive as well as the nonproductive hours.")

Southwick contends that the federal authority on which HAM relies is inapplicable. She also contends that whether she and other case managers were paid at least the equivalent of minimum wage for all of their hours worked is irrelevant.

Southwick's proposed class definition assumes the validity of her interpretation of Maine law because, as noted above, she proposes classes consisting of those case managers who "were not paid" for travel time and time spent on paperwork and "weren't properly reimbursed" for the use of their personal vehicles. This means that, if HAM's interpretation of the applicable Maine wage

6

statutes is correct and all case managers have been already been paid for paperwork time, travel time and for use of their vehicles, there would be no members of any of the proposed classes.

## Procedural History

The parties' briefing of Plaintiff's Motion for Class Certification focused mainly on the certification criteria contained in M.R. Civ. P. 23, such as the numerosity of the proposed class; typicality of Southwick's claims and the adequacy of her proposed representation of the class. Each party's initial briefing assumed that the issues underlying Southwick's cause of action would be decided in the party's favor, without delving deeply into those issues.

Southwick's claim that she is entitled to additional compensation for travel time and paperwork time rests on two conceptually distinct arguments.

First, she claims that she did not agree to accept the $29/35 payment per client billable hour as compensation for her travel time and paperwork time. *See* Plaintiff's Brief in Support of Motion for Class Certification at 12-14.

Second, she asserts that, regardless of whether or not she or any other case manager agreed to HAM's policy, HAM's policy violates the Maine wage statute prohibiting an employer to permit an employee to work without compensation, even if the employee has agreed. *Id.* at 2-10, *citing* 26 M.R.S. § 629.

Plainly, if Southwick is correct on the second contention—the illegality of HAM"s compensation policy regardless of whether the case manager agreed to it—

7

that the case may be able proceed as a class action if the certification requirements are met. If HAM's policy is illegal on its face, then Southwick and the members of the proposed travel time and paperwork classes could be entitled to additional compensation upon proof of uncompensated time worked.

On the other hand, if HAM's policy is not illegal, the basis for the case to proceed as a class action becomes tenuous, if not non-existent, because the issues become particular to each case manager—whether the case manager understood and agreed to the policy, and whether the case manager was compensated for all hours worked at least at the level of the applicable minimum wage.

The parties' focus in their initial briefing upon class issues was appropriate, because in most instances the validity of claims is litigated or determined after certification of a class is granted or denied. However, this case is unusual in that, as just noted, whether this case proceeds as a class action hinges largely on which party's interpretation of Maine's wage payment law is correct.

Due to the substantial judicial and party resources associated with class action litigation, the court concluded that it would be an efficient use of judicial and party resources to focus on the legal issue of the validity of HAM's compensation practices in considering the class certification issues.

At the court's request, the parties filed supplemental briefs on the issue whether HAM's case manager compensation policy complies with Maine law. The

last of those filings was docketed August 26, 2019 and oral argument was held September 19, 2019.

## Validity of HAM's Compensation Policy Under Maine Law

Southwick's contention that HAM's compensation policy is illegal rests primarily on 26 M.R.S. § 629, which provides in pertinent part:

> A person, firm or corporation may not require or permit any person as a condition of securing or retaining employment to work without monetary compensation or when having an agreement, oral, written or implied, that a part of such compensation should be returned to the person, firm or corporation for any reason other than for the payment of a loan, debt or advance made to the person, or for the payment of any merchandise purchased from the employer or for sick or accident benefits, or life or group insurance premiums, excluding compensation insurance, that an employee has agreed to pay, or for rent, light or water expense of a company-owned house or building.

26 M.R.S. § 629(1).

Her Supplemental Reply Brief challenges HAM's claim that its policy is a flat rate or piecework compensation arrangement:

> HAM's pay policy is distinguishable from the other payment schemes it attempts to analogize. There is no fixed pay, like with salaried employees (either by the day or by the week). There is no "task," akin to a brake replacement or a house painted. There is no unit of production akin to a basket of blueberries. Instead, what HAM proposes is an extension of piece rate pay such that the unit of production is the *hour* itself. This is a contrived way to get around § 629, is not backed by any precedent, and must fail to preserve the law.

Plaintiff's Supplemental Reply Brief at 3 (emphasis in original).

However, it is undisputed that HAM has defined the term "client billable hour" in terms of all of the time required for a case manager to generate an hour of

9

client service that is billable to MaineCare, including travel time and paperwork time, as well as the time spent rendering the billable service. Thus, HAM's policy thus is to compensate the case manager for the completion of a task—the work needed to produce a client billable hour.

HAM's term "client billable hour" may or may not be ambiguous and Southwick may or may not have understood or agreed to how HAM defined the term when she was hired, but those questions are not before the court. What the record before the court makes it clear that HAM's policy has always been that the $29/25 payment "per client billable hour" covers all time associated with the production of a client service hour that can be billed to MaineCare.

With that clarification of what HAM's policy actually is and has been, this analysis now turns to the essential issue—whether HAM's policy complies with the 26 M.R.S. § 629 requirement that an employee be compensated for all of her work.

HAM's position relies on two essential points. First, HAM says nothing in Maine law prohibits its compensation policy. Second, HAM points to provisions of federal regulations that HAM says validate its compensation policy.

The federal Fair Labor Standards Act [FLSA], 29 U.S.C. § 201-19, sets the applicable minimum wage (either the federal minimum or a higher state minimum) as a compensation floor, but allows employers to compensate employees by the

10

hour or on a piecework or commission basis as long as the minimum wage floor is met:

> The [FLSA]'s individual employee coverage is not limited to employees working on an hourly wage. The requirements of section 6 as to minimum wages are that "each" employee described therein shall be paid wages at a rate not less than a specified rate "an hour". This does not mean that employees cannot be paid on a piecework basis or on a salary, commission or other basis; it merely means that whatever the basis on which the workers are paid, whether it be monthly, weekly, or on a piecework basis, they must receive at least the equivalent of the minimum hourly rate.

29 C.F.R. § 776.5.

As to an employee's use of a personal vehicle for work purposes, the analysis is similar. In other words, nothing in federal law requires an employer to reimburse an employee for mileage, but the cost of an employee's use of a personal vehicle for work must be considered, along with the employee's number of actual hours worked, in determining whether the employee's compensation is at least at the level of the applicable minimum wage. *See* U.S. Dep't of Labor, Wage and Hour Div., Field Operations Handbook ch. 30c15, https://www.dol.gov/whd/FOH/FOH_C h30.pdf ("In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.")

Thus, HAM's compensation policy complies with federal law as long as it meets two conditions:

11

(1) the policy is agreed to by the case manager and

(2) the case manager's compensation, divided by the actual hours worked after the cost to the employee of the use of a personal vehicle is first subtracted, equals or exceeds the applicable minimum wage.

Southwick does not challenge HAM's contention that its policy complies with federal law. Also, Southwick does not contend that case managers as a group are compensated at less than the applicable minimum wage. Instead, Southwick dismisses these contentions as irrelevant because her claim is based on the Maine wage payment statutes not on federal law. Southwick does acknowledge that Maine law permits compensation on a piecework basis, but not for the work that HAM case managers do.

At oral argument, there was extensive discussion of the blueberry industry's practice of compensating pickers on a per pound rather than on an hourly basis. Southwick agrees that this practice is legal but contends that HAM's policy is different because of the higher amount of non-productive time involved in the travel and paperwork required for each MaineCare billable hour.

Southwick drew an analogy between HAM's policy and a blueberry grower's policy of requiring its pickers to put in a large amount of unproductive time not spent picking, by making them walk 10 miles to turn in their baskets. But in fact, as long as the pickers have agreed to the arrangement and as long as their compensation for time spent both picking and walking equals or exceeds the

12

applicable minimum hourly wage and any overtime compensation due, the 10-mile walk requirement would appear not be illegal under federal wage and hour law.[1]

Thus, the legal issue boils down to whether Maine law prohibits HAM's compensation policy even though the policy complies with federal law. The court concludes that it does not.

Although Maine law plainly compels employers to compensate employees for work and prohibits agreements to work without compensation, nothing in the sections of title 26 cited in Southwick's complaint—section 621-A, 626-A and 629—says that an employee's compensation must be based on actual hours worked instead of on a task-based or piecework basis. The operative section of the three—the one that defines the wage payment obligation—is section 621-A, but it says simply that "wages earned" are to be paid at regular intervals not to exceed 16 days. It does not say that "wages earned" must be based on hours actually worked as opposed to being based on tasks performed or piecework.

In sum, nothing in the Maine statutes on which Southwick relies says specifically that an employer can—or cannot—compensate employees in the manner that HAM compensated Southwick. Neither party has pointed to any legislative history that would dispel the silence within the statute.

---

[1] The court has not researched whether there are separate labor standards peculiar to the blueberry industry nor researched the OSHA and other workplace regulatory implications of the 10-mile walk.

13

Southwick points to the remedial nature of the Maine wage payment statutes and argues that they should be construed in favor of the employee. But the federal FLSA, which allows for compensation policies such as HAM's, is also a remedial statute and is also construed in favor of the employee. *See Tennessee Coal, Iron & Railroad Co. v. Muscoda,* 321 U.S. 590, 597-98 (1944). Similarly, the fact that section 629 prohibits employers from requiring employees to "work without compensation" does not necessarily mean that it goes beyond federal law, because the FLSA has an identical prohibition.

The Maine Legislature has enacted wage requirements stricter than federal law, as exemplified in Maine's minimum wage statute. *See* 26 M.R.S. § 664(1). To the extent the Maine minimum wage is higher than the federal minimum wage, the floor that all employee compensation must meet is higher in Maine than nationally.

In contrast, there is no indication, either in the language of section 629 or in its legislative history, that the Maine Legislature intended to prohibit compensation policies such as HAM's that comply with federal law as long as the policies meet the express requirements of section 621-A and yield compensation at least at the level of the Maine minimum wage. If such a prohibition is to be imposed, it should be by the Legislature, not by the courts.

Accordingly, the court concludes that HAM's compensation policy, at least on its face, does not violate 26 M.R.S. § 629. This means that Southwick's cause of action requires her to prove that it violated section 629 as applied to her, either

14

because she never agreed to HAM's compensation policy, and/or because it resulted in her compensation, considering her actual hours worked and the cost of her use of a vehicle, being less than the applicable minimum wage per hour worked.[2] The analysis now turns to Southwick's Motion for Class Certification in light of the foregoing legal conclusion.

## Motion for Class Certification

Rule 23 of the Maine Rules of Civil Procedure sets forth four prerequisites to the maintenance of a class action, *see* M.R. Civ. P. 23(a)(1)-(4), and three additional standards that must be met for the action to proceed as a class action, *see id.* 23(b)(1)-(3).

*The Rule 23(a) Prerequisites*

M.R. Civ. P. 23(a) reads as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4)the representative parties will fairly and adequately protect the interests of the class.

---

[2] HAM contends that Southwick is not claiming to have been paid less than the minimum wage, so HAM's view may be that there is nothing left for the court to decide. *See* Supplemental Brief of Health Affiliates Maine, LLC at 1. It is true Southwick's complaint does not refer to the minimum wage statute but under the rules of notice pleading her complaint is sufficient to state a claim that HAM has failed to compensate her as required by law. Unless Southwick concedes the point, HAM's contention will need to be pressed through summary judgment or at trial.

*The Rule 23(a)(1) Numerosity Prerequisite:* Southwick's Motion contends that all three of her proposed classes will include most or all of the 65 current HAM case managers and also herself and others who were formerly employed by HAM as case managers and still have actionable claims. The proposed classes would be sufficiently numerous.

*The Rule 23(a)(2) Common Questions of Law or Fact Prerequisite:* There is a clearly common question of law—whether HAM's compensation policies and practices for case managers comply with Maine wage payment laws. Because this Order answers the question in HAM's favor, the questions become mainly ones of fact--(1) did the class member agree to the payment arrangement and (2) was the class member compensated at least at the level of the applicable minimum hourly wage? There would be a separate trial on both liability and damages as to every class member, and this would essentially eliminate any rationale for the case to proceed as a class action.

*The Rule 23(a)(3) Representative Claims Prerequisite:* Whether Southwick's claims are representative of those of the proposed class members also depends on how that single common question of law as to the validity of HAM's compensation policy is answered. Because this Order has answered the question in HAM's favor, the questions presented are unique to every HAM class manager--whether the case manager agreed to HAM's compensation policies and whether the case manager was compensated at least to the level of the applicable minimum hourly wage.

16

*The Rule 23(a)(4) Fair and Adequate Representation Prerequisite:* There is no question about the adequacy of proposed class counsel, but as HAM's opposition points out, Southwick has little if any proof of how much time she spent on the paperwork and travel for which she claims she should have been paid an hourly rate. In that regard, this case resembles *McKinnon v. Honeywell International, Inc.*, in which the Law Court noted that the case could not proceed as a class action because of "the overall speculative nature" of the claim of the proposed class representative. 2009 ME 69, ¶ 18, 977 A.2d 420.

In *McKinnon,* the trial court deemed the proposed representative's cause of action insufficient as a matter of law, whereas the sufficiency of Southwick's proof is not at issue, except to the extent she claims her proof is adequate to enable her to represent the proposed classes. But the lack of back-up for her assertions does reflect on the adequacy of her proposed representation, because it plainly could affect her recovery if certification is denied, and could affect the proposed classes' recovery if certification is granted.

*The Additional Rule 23(b) Criteria*

Beyond the Rule 23(a) prerequisites to class certification, Rule 23 lists three criteria, at least one of which needs to be for the case to proceed as a class action:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests, or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

> (D) the difficulties likely to be encountered in the management of a class action.

M.R. Civ. P. 23(b).

Southwick's Motion for Class Certification addresses only the last of the three criteria and does not contend that this case satisfies either of the first two.

Based on this court's view that HAM's case manager compensation policy does not violate 26 M.R.S. § 629, there is no reason for the case to proceed as a class action. Each case manager's claim would depend on whether she understood and agreed to HAM's policy and whether she was in fact compensated for her total hours worked and for the cost of the use of her personal vehicle for work purposes at least at the level of the applicable minimum wage. Whether Southwick or any other case manager did agree and was compensated at the required level has little bearing on whether any other case manager agreed or was compensated at that level.

For these reasons, it is ORDERED: Plaintiff's Motion for Class Certification is denied. The Clerk will schedule this case for a conference of counsel for purposes of setting a schedule for the remaining phases of this case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated September 30, 2019

_____
A. M. Horton, Justice

Entered on the Docket: 10 2 19

19