IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2019 Session

## GERALD BROWN v. WADDELL WRIGHT ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 17-805-III          Ellen Hobbs Lyle, Chancellor**

——————————————————

**No. M2018-01743-COA-R3-CV**

——————————————————

This appeal arises from a dispute over an unorthodox, two-page contract pursuant to which the plaintiff sold his home to the defendant and continued to reside in the home, in accordance with a lease-back provision, for "up to five years" with rent "not to exceed $950 a month." The contract also included provisions for "equity participation," including the option for the plaintiff to buy the property back "at prevailing market value." The plaintiff filed a complaint asserting, *inter alia*, claims for violations of the Tennessee Consumer Protection Act, quiet title, and breach of contract. The defendant answered and asserted counterclaims, *inter alia*, for breach of contract and to remove the plaintiff from the property. Following a trial, the trial court dismissed the complaint upon the principal findings that the plaintiff lacked credibility and was the first to materially breach the contract. The trial court also ruled that the defendant owned the property and was entitled to immediate possession but denied the defendant's claim to recover his attorney's fees. Both parties appeal. We affirm the dismissal of all of the plaintiff's claims and the trial court's determination that the defendant owned the property and was entitled to immediate possession. As for the attorney's fees, we hold that the defendant was entitled to recover his reasonable attorney's fees based on Section 6 of the contract which provides that in the event suit is filed to enforce the contract, "the prevailing party shall be entitled to recover all cost of such enforcement including reasonable attorney's fees as approved by the Court."

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Joseph H. Johnston, Nashville, Tennessee, for the appellant, Gerald Brown.

Christopher B. Fowler, and Thomas V. White, Nashville, Tennessee, for the appellee, Waddell Wright, individually and d/b/a W. Wright & Co., LLC.

**OPINION**

For 50 years Gerald Brown ("Plaintiff") owned and resided on real property located at 913 Lawrence Avenue in the 12th South/Waverly Belmont neighborhood in Nashville (the "Lawrence Avenue Property"). In 2013, Plaintiff got behind on his mortgage payments and, in August 2016, foreclosure proceedings began.

Waddell Wright ("Defendant") is a real estate developer who buys, renovates, leases, and resells properties. After Defendant saw a local publication of pending foreclosure properties, including the Lawrence Avenue Property, he wrote a letter to Plaintiff offering to purchase the property. Defendant identified himself as a real estate professional in the business of assisting property owners during the foreclosure process and encouraged Plaintiff to waste no time before reaching out. In response, Plaintiff called Defendant and began to negotiate the sale of the property to halt foreclosure.

On November 28, 2016, Plaintiff and Defendant signed a two-page sales contract selling the Lawrence Avenue Property to Defendant for $146,000, which was to be paid to the mortgage company to release the lien on the property, plus a cash payment of $10,000 to Plaintiff at closing, an "equity participation" in the future sale of the property, and additional payment of $50,000 "on or before the end of the 5yr lease period" or earlier if the parties agreed. The most relevant contractual provisions are set forth in Sections 6 through 9 of the contract, which read:

6.      Default. Should Purchaser default at any time in the performance of this Agreement, Seller shall retain any Earnest Money paid as total and complete liquidated damages and Purchaser shall have no further obligation to the Seller. Should Seller default at any time in the performance of this Agreement, any Earnest Money paid to Seller shall be returned to the Purchaser and Purchaser shall have the right to sue the Seller for specific performance and any other actions permitted by law, including reasonable attorney's fees, arising from said breach. In the event that either party hereto shall file a law suite [sic] to enforce this Agreement, the prevailing party shall be entitled to recover all cost of such enforcement including reasonable attorney's fees as approved by the Court.

7.      Possession. On or before 60 months after day of deed.

8. Seller Lease Back. Seller to lease back the property for up to 5 years after settlement date. Seller and purchaser will agree to enter into a lease agreement not to exceed $950.00 per month.

9. Equity Participation. Gerald Brown Sr. will receive $10,000 at closing and $50,000 on or before the end of the 5yr lease period or if both parties agree to a sooner date. Or Gerald Brown Sr. can purchase the property back from purchaser at prevailing market value at the end of the 5-year term. Gerald Brown Sr. will have to pay back any and all funds purchaser advanced plus a return no less than 25%. After that purchaser and seller at 50/50 partners.

The sale closed on December 12, 2016, at which time Defendant paid off the mortgage of approximately $146,000 and remitted a cash payment to Plaintiff of an additional $10,000 pursuant to Section 9 of the sales contract. Additionally, and as the "Equity Participation" provision required, Defendant placed $50,000 in an escrow account.

Plaintiff remained on the property as contemplated by the lease-back provision in the contract. Three days after the closing, Defendant delivered a proposed lease agreement to Plaintiff for the Lawrence Avenue Property but received no response. Defendant subsequently delivered two additional lease proposals, still without a response from Plaintiff. Nevertheless, Plaintiff has remitted a rent payment of $950 to Defendant each month since the closing, which Defendant accepted, but the parties never executed a written lease agreement.

A few months following the closing, Plaintiff asked Defendant to remodel the Lawrence Avenue Property so that Plaintiff's daughter, Ms. Marion Bowers, could live there as well. Because the Lawrence Avenue Property was located in a design overlay district that mandated the preservation of the historical appearances of the structures, Defendant determined that an addition or remodel was not financially feasible.

Nevertheless, Defendant offered another property, a duplex located on Kings Lane in Nashville (the "Kings Lane Property") as an alternative so that Plaintiff and his daughter could live next door to one another. Plaintiff and his daughter expressed interest in moving to the properties on Kings Lane and met Defendant at the properties to view them. Believing they had an agreement, Defendant remodeled the Kings Lane duplex. Although Ms. Bowers moved to the Kings Lane Property, Plaintiff did not.

In the interim, on March 9, 2017, in reliance on Plaintiff's assurances that he intended to move to the Kings Lane Property, Defendant signed a contract to sell the Lawrence Avenue Property for $450,000 to Province Builders, LLC, and the parties closed on April 14, 2017. The sales contract expressly stated that "title shall be

- 3 -

marketable, free and clear of all leasehold interest," and that Province Builders would be entitled to possession three months after the date of closing.

Shortly after the closing, Defendant informed Plaintiff of the sale and that he would have to relocate by the end of July 2017.[1] Plaintiff refused to move from the property on Lawrence Avenue and repeatedly refused to sign any of the lease agreements Defendant presented for either the Kings Lane or Lawrence Avenue Properties. Between the original sale of the Lawrence Avenue Property on December 12, 2016, until the end of July 2017, Defendant delivered several different lease proposals, some for the Lawrence Avenue Property and some for the Kings Lane Property, and without any substantive reason from Plaintiff as to why, none were returned signed.[2]

On July 26, 2017, Plaintiff asked Province Builders to honor the five-year lease provided in the sales contract between Plaintiff and Defendant; Province Builders did not respond. Defendant then offered the $50,000 to Plaintiff if he would relocate, but Plaintiff refused the money as he desired to remain in possession of the Lawrence Avenue Property.

On August 1, 2017, Plaintiff filed the complaint against Defendant and Province Builders, asserting claims for violation of the Tennessee Consumer Protection Act (the "TCPA"), commercial fraud, quiet title, and breach of contract. Plaintiff alleged that Defendant violated the TCPA by "misrepresenting to Plaintiff that he had an enforceable five (5) year leasehold interest in the Lawrence Property." He claimed Defendant perpetrated an unfair or deceptive business act on a consumer over the age of 60 by drafting an illusory contract, knowing Plaintiff did not understand his rights and remedies under the contract. Plaintiff also alleged that Defendant breached the contract because he

---

[1] In his deposition, Defendant stated that he met with Plaintiff and Ms. Bowers during the contingency period of the first sales contract with Province Builders. Plaintiff contends that Defendant never told him he was in the process of selling the property or that the property closed. Rather, Plaintiff stated that he only discovered the sale after going to the register of deeds office, but Plaintiff did not clarify when he discovered this. After Defendant's alleged meeting with Plaintiff at the Kings Lane Property, Defendant believed Plaintiff was going to move to the Kings Lane Property and told Plaintiff to meet him at Pinnacle Bank at 9:00 Monday morning to receive his $50,000 check. Plaintiff went to the bank on Monday morning and presented Defendant with a list of questions "about who owned what and who had whose interest." Defendant and Plaintiff could not come to an agreement, and Plaintiff left without the $50,000.

[2] We have only referenced three leases that Defendant presented to Plaintiff for the Lawrence Avenue Property; however, the trial court found that Defendant offered a total of seven proposed leases for the Lawrence Avenue and the Kings Lane Properties. Having determined that the other proposed leases are of little significance to the issues on appeal, we do not discuss them.

"did not execute a separate five (5) year lease buy back agreement with Plaintiff as part of the consideration required by the contract."

Plaintiff later amended his complaint to add a claim for specific performance to enforce the five-year lease agreement he had for the Lawrence Avenue Property and requested the court direct Defendant to interplead the $50,000 being held in escrow as "a buyout of Plaintiff's five (5) year leasehold interest in 913 Lawrence Avenue" pending the final disposition of the case.[3]

On September 22, 2017, Defendant filed an answer and counter-complaint against Plaintiff asserting claims for (1) breach of contract; (2) promissory estoppel; and (3) declaratory judgment. Defendant later amended the counter-complaint to include a claim for (4) forcible entry and detainer to remove Plaintiff from the Lawrence Avenue Property. Defendant alleged that Plaintiff breached the contract by refusing to sign any lease agreement with Defendant. Defendant claimed he reasonably relied upon representations that Plaintiff would move to the Kings Lane Property. Additionally, Defendant prayed for a declaratory judgment to determine the meaning, validity, and enforceability of the terms within the contract, that the $50,000 in escrow be returned to Defendant, and that Plaintiff specifically perform the contract. The counter-complaint asked the court to declare that Defendant was the legal owner and entitled to possession of the property. Defendant also sought damages for the loss he suffered after repurchasing the home from Province Builders as well as his attorney's fees pursuant to Section 6 of the sales contract.

In the interim, on September 18, 2017, Defendant repurchased the Lawrence Avenue Property from Province Builders for $460,200, and the parties subsequently entered into an agreed order dismissing Province Builders as a co-defendant.

A two-day bench trial was held May 22–23, 2018. In its final order entered on July 13, 2019, the trial court found that Plaintiff's testimony lacked credibility because Plaintiff was evasive in his answers and was repeatedly impeached.

> The proof established that the Plaintiff is nearly 80 years old with medical issues of a pacemaker and diabetes. Nevertheless, he is mentally alert and sharp and demonstrated keen understanding and intelligence. The proof established that the Plaintiff was not misled or deceived, nor was he a victim.

---

[3] In his complaint, Plaintiff stated the $50,000 was being held in an escrow account, "which W. Wright LLC claims is a buy out of Plaintiff's five (5) year leasehold interest in 913 Lawrence Avenue."

The Court finds that the Defendant performed the Contract by: paying the mortgage, paying judgments recorded against the Lawrence Property, paying the Plaintiff $10,000, and delivering a lease to the Plaintiff three days after the closing.

The Court finds that the Plaintiff was the first to breach by not responding to the lease that was delivered either by executing it or providing modifications.

The facts and the evidence did establish . . . that the Plaintiff led the Defendant along that the Plaintiff was interested in the Kings Lane property when the Plaintiff knew he was not. This deception combined with the Plaintiff's first and continuing breach of refusal to execute a lease on the Lawrence Property deprive and preclude the Plaintiff from recovery of the $50,000 on deposit in the registry of the Court, and the Clerk and Master shall disburse the $50,000 to the Defendant.

The trial court also held that Plaintiff's possessory interest and Plaintiff's entitlement to the $50,000 were conditioned on the parties entering into a valid lease agreement.

Based on the foregoing and other evidence in the record, the trial court ruled that Defendant was the legal owner of the Lawrence Avenue Property and ordered Plaintiff to vacate the property. The court further ordered that the $50,000 interplead under the "Equity Participation" section of the sales contract was to be returned to Defendant. The trial court awarded neither side any damages or attorneys' fees.

On September 24, 2018, the trial court entered an order staying execution of the judgment pending appeal under Rule 62.04 and 62.05(2) of the Tennessee Rules of Civil Procedure. In its order, the trial court allowed Plaintiff to continue paying the rental rate of $950 per month in lieu of bond.

### ISSUES

Plaintiff raises several issues, which we have re-phrased and consolidated as follows:

1. Whether Defendant violated Tenn. Code Ann. §§ 47-18-104(b)(12) and -125 of the Tennessee Consumer Protection Act.
2. Whether Plaintiff was the first to materially breach the contract by refusing to sign a lease agreement.
3. Whether Plaintiff was entitled to specific performance under the parties' original contract.

- 6 -

Defendant also raises several issues, which we have re-phrased and consolidated as follows:

1. Whether the trial court erred in not awarding damages and attorney fees pursuant to the contract.
2. Whether the trial court erred in staying execution of the judgment without requiring Plaintiff to post a bond.

### STANDARD OF REVIEW

This is an appeal from a decision made by the trial court following a bench trial; therefore, the standard in Tenn. R. App. P. 13(d) governs our review. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). "This rule contains different standards for reviewing a trial court's decisions regarding factual questions and legal questions." *Id.*

We review a trial court's findings of fact following a bench trial de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review the trial court's conclusions of law de novo with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 360 (Tenn. 2011).

"[F]or the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We will also give great weight to a trial court's factual findings that rest on determinations of credibility and weight of oral testimony. *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007) (citations omitted); *B & G Const., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000) (citation omitted).

In *Wells v. Tennessee Board of Regents*, the Tennessee Supreme Court explained that

> trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425–26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts

- 7 -

will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315–16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978).

9 S.W.3d 779, 783 (Tenn. 1999).

## ANALYSIS

### I.    TENNESSEE CONSUMER PROTECTION ACT

We first turn to Plaintiff's contentions (1) that the sales contract was illusory, deceptive, and misleading in violation of Tenn. Code Ann. § 47-18-104(b)(12); and (2) that Defendant's business practice was illusory and unenforceable as an unfair or deceptive business practice targeted at elderly persons in violation of Tenn. Code Ann. § 47-18-125.

The relevant sections of the TCPA provide:

The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

.    .    .

(12)    Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law[.]

Tenn. Code Ann. § 47-18-104(b).

Any person who knowingly uses, or has knowingly used, a method, act or practice which targets elderly persons and is in violation of this part is liable to the state for a civil penalty of not more than ten thousand dollars ($10,000) for each violation. Each violation may include but is not limited to, each elder person solicited, each advertisement that was distributed, each misrepresentation or deceptive statement that appeared on a solicitation, each time that an advertisement appeared on television or on radio, each contact, i.e., telephone call, direct mail solicitation or in person solicitation with an elder person to promote or solicit using unfair, misleading or deceptive acts or practices.

Tenn. Code Ann. § 47-18-125(a).

- 8 -

To recover damages under the TCPA, a plaintiff must prove: "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . .'" *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)).

The key terms "unfair" and "deceptive" are not defined by the TCPA. Therefore, "the standards to be used in determining whether a representation is 'unfair' or 'deceptive' under the TCPA are legal matters to be decided by the courts." *Tucker*, 180 S.W.3d at 116 (citations omitted). "However, whether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact." *Id.* (citing *Davidson v. Gen. Motors Corp.*, 786 N.E.2d 845, 851 (Mass. App. Ct. 2003)). As a question of fact, review on appeal is de novo with a presumption of correctness. Tenn. R. App. P. 13(d).

*"A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Id.* at 116. Thus, "the essence of deception is misleading consumers by a merchant's statements, silence, or actions." *Id.* (citing Jonathan Sheldon & Carolyn L. Carter, *Unfair and Deceptive Acts and Practices* § 4.2.3.1, at 118–19 (5th ed. 2001)). "The concept of unfairness is even broader than the concept of deceptiveness, and it applies to various abusive business practices that are not necessarily deceptive." *Id.* (citing Sheldon, *supra* § 4.3.3.1, at 156).[4]

In the 1994 legislation reauthorizing the Federal Trade Commission, Congress stated "that an act or practice should not be deemed unfair 'unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" *Id.* at 116–17 (quoting 15 U.S.C. § 45(n)). "To be considered 'substantial,' consumer injury must be more than trivial or speculative." *Id.* at 117 (citing *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998); *Legg v. Castruccio*, 642 A.2d 906, 917 (Md. Ct. App. 1994)). Pursuant to Tenn. Code Ann. § 47-18-115, this description of unfairness guides our interpretation of Tenn. Code Ann. § 47-18-104(b)(12). *Id.*

---

[4] As for TCPA claims dealing with real property, our Supreme Court has explained that the "[t]he Tennessee Consumer Protection Act forbids 'unfair or deceptive acts or practices affecting the conduct of any trade or commerce'" and "covers the transfer of real property." *Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009) (quoting Tenn. Code Ann. § 47-18-104(b)).

Even if an act or practice causes or is likely to cause substantial injury, it will not be considered unfair unless the injury is not reasonably avoidable by consumers themselves. Consumers cannot reasonably avoid injury when a merchant's sales practices unreasonably create or take advantage of an obstacle to the free exercise of consumer decision-making. Practices that unreasonably interfere with consumer decision-making include (1) withholding important information from consumers, (2) overt coercion, or (3) exercising undue influence over a highly susceptible class of consumers.

*Id.* (citations omitted).

After finding that Plaintiff was mentally sharp and alert, the court determined that "[t]he proof established that [Plaintiff] was not deceived, nor was he a victim." Notably, the trial court found that it was Plaintiff who misled and deceived Defendant, not the other way around. The court found it was never Plaintiff's intention to leave the Lawrence Avenue Property and that once Plaintiff used Defendant to save him from foreclosure, Plaintiff refused to perform the contract and did not enter into a lease agreement. Additionally, Plaintiff misled Defendant concerning the Kings Lane Property when Plaintiff had no intention of moving there or engaging in that transaction.

Specifically, the trial court stated:

Trial exhibits 16, 17, 18, 19, 20, 21, 22 are lease/purchase agreements Defendant's Counsel sent to the Plaintiff and his Counsel. These exhibits corroborate the testimony of the Defendant which the Court accredits that the Defendant was misled by the Plaintiff and believed that the Plaintiff had decided he wanted to move from the Lawrence Property to the Kings Lane Property.

The court also made credibility findings, wherein it did not credit Plaintiff's testimony because he was evasive and repeatedly impeached. For example, Plaintiff tried to downplay that in 2016, he was in arrears on his mortgage, and foreclosure proceedings had begun. Further, the trial court credited Defendant's testimony that he delivered a lease agreement to Plaintiff three days after closing on the Lawrence Avenue Property.

On appeal, Plaintiff requests that this court overrule the trial court's credibility findings and hold that Defendant's business practice was illusory and unenforceable. However, the determination of "whether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact," and we give deference to the trial court's ruling on this matter. *Tucker*, 180 S.W.3d at 116. "[F]or the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Realty Shop, Inc.*, 7 S.W.3d at 596. We will also give great weight to

a trial court's factual findings that rest on determinations of credibility and weight of oral testimony. *Walton*, 950 S.W.2d at 959.

"A party bringing a TCPA action must prove that there was some deception, misrepresentation or unfairness, regardless of any breach of contract." *Hall v. Hamblen*, No. M2002-00562-COA-R3-CV, 2004 WL 1838180, at *4 (Tenn. Ct. App. Aug. 16, 2004) (citing *Hamer v. Harris*, No. M2002-00220-COA-R3-CV, 2002 WL 31469213, at *1 (Tenn. Ct. App. Nov. 6, 2002)). After a thorough review of the record, we conclude the evidence preponderates in favor of the trial court's finding that Defendant did not deceive Plaintiff. Accordingly, we affirm the dismissal of Plaintiff's TCPA claim.

## II.    BREACH OF CONTRACT

The parties dispute what happened after closing on the Lawrence Avenue Property. Defendant claimed he delivered a proposed lease agreement to Plaintiff three days after the closing. Plaintiff testified that he never received the proposed lease agreement. Conversely, Defendant testified that he presented multiple lease agreements to Plaintiff, and Plaintiff failed to sign any of them. In the end, the parties never entered into a separate, written lease agreement under Section 8 of the real estate purchase contract.

Plaintiff argues that Defendant was the first to materially breach the sales contract by failing to give Plaintiff notice, written or otherwise, that not signing a separate lease agreement was a breach of the contract. In support of his position, Plaintiff contends "[n]otice ought to be given when information material to the performance of a contract is within the peculiar knowledge of only one of the contracting parties." *See McCain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990). In contrast, Defendant asserts Plaintiff was the first to materially breach the contract by refusing to sign or negotiate the lease, and both parties were aware they had not entered into a written lease agreement.

"It is well-established that '[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts.'" *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013) (quoting *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)). However, "courts will not make a new contract for parties who have spoken for themselves." *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003) (citing *Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955)); *see Wallace*, 938 S.W.2d at 687 ("[T]he common law duty of good faith does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties."); *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) ("If the contractual language is clear and unambiguous, the literal meaning controls[.]").

As part of the contract for the sale of the Lawrence Avenue Property, the parties contemplated a future lease agreement. While the sales contract did not create such a lease agreement, the trial court found it imposed upon both parties a duty of good faith to meet the reasonable contractual expectations of the parties. The trial court credited Defendant's testimony that three days after the closing, Defendant delivered a lease to Plaintiff and never received a response. By unreasonably refusing to sign any lease agreements, the trial court ruled Plaintiff breached his duty of good faith and was the first to materially breach.

Although there was no written lease, because Defendant accepted Plaintiff's payment of rent each month in the amount of $950, Plaintiff had a possessory interest in the property as a month-to-month tenant. *See* Tenn. Code Ann. § 66-28-202(a) ("If the landlord does not sign a written rental agreement, acceptance of rent without reservation by the landlord binds the parties on a month to month tenancy.") However, this interest was subject to a month's notice of termination before commencement of the next month's term. *R & E Props. v. Jones*, No. 03A01-9804-CV-00133, 1999 WL 38282, at *2 (Tenn. Ct. App. Jan. 13, 1999) *perm. app. denied* (Tenn. June 14, 1999).

Both sides agree that in March or April of 2017, Defendant and Plaintiff discussed Plaintiff moving to the property on Kings Lane. It was at that point that Defendant sold the Lawrence Avenue Property and informed Plaintiff that he would need to move from the Lawrence Avenue Property by the end of July 2017. Accordingly, Defendant gave Plaintiff ample notice, and the trial court correctly found that Plaintiff was the first to materially breach. As such, Defendant is entitled to possession.

## III. SPECIFIC PERFORMANCE

Plaintiff contends he is entitled to specific performance under Sections 8 and 9 of the contract, which provide that Plaintiff and Defendant will enter into a five-year lease of the Lawrence Avenue Property with an option to purchase the property at the end of the term.

"An agreement to lease is not a lease, just as a contract to sell is not a sale." *Ryan v. Stanger Inv. Co.*, 620 S.W.2d 505, 508 (Tenn. Ct. App. 1981). Nevertheless, in either case, "the owner may be required to perform by a Court of Equity." *Id.* Where specific performance for the lease or sale of realty is decreed, "[t]he contract must be clear, definite, complete and free from any suspicion of fraud or unfairness." *Johnson v. Browder*, 207 S.W.2d 1, 3 (Tenn. 1947); *see Ryan*, 620 S.W.2d at 509. Specific performance "is not available to either party as a matter of right, but rests in "the sound discretion of the chancellor under the facts appearing in the particular case." *T. J. Moss Tie Co. v. Hill*, 235 S.W.2d 587, 589 (Tenn. 1951).

The trial court ruled that Plaintiff was not entitled to specific performance because Plaintiff was the first to materially breach the contract. When one party materially breaches, the other party has the right to terminate the agreement. Restatement (Second) of Contracts, § 237. Because Plaintiff neither signed nor negotiated the lease agreements provided by Defendant, he was the first to materially breach. As such, the trial court did not abuse its discretion by denying equitable relief.

## IV.    DAMAGES

Defendant contends the trial court erred in declining to award damages. Defendant's brief failed to cite to any legal authority in support of his claim for damages, and "the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (listing cases). Accordingly, Defendant has waived this issue on appeal.

## V.    ATTORNEYS' FEES

The trial court declined to award either party costs or attorneys' fees. Defendant contends this was an error because the contract provides that the prevailing party shall be entitled to recover his costs and attorney's fees. He also contends he is entitled to recover his costs and attorney's fees for successfully defending a frivolous claim pursuant to the TCPA.

Section 6 of the contract provides in pertinent part: "In the event that either party hereto shall file a law suite [sic] to enforce this Agreement, the prevailing party shall be entitled to recover all costs of such enforcement including reasonable attorney's fees as approved by the Court."

"Tennessee, like most jurisdictions, adheres to the 'American rule' for the award of attorney fees." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (footnote omitted). A party may recover attorney fees only when "a contractual or statutory provision creates a right to recover attorney fees," or some other recognized exception applies. *Id.* "Accordingly, parties who have prevailed in litigation to enforce their contractual rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017).

Section 6 of the sales contract is clear. As the prevailing party in this action, Defendant is entitled to recover his reasonable costs and attorneys' fees. Therefore, we reverse the trial court's ruling on this issue and remand for a determination and award of reasonable attorneys' fees incurred by Defendant.

## VI.   BOND

Defendant contends the trial court erred in allowing Plaintiff to retain possession on appeal without posting the requisite bond. In support of this position, Defendant relies on Rule 62.05 of the Tennessee Rules of Civil Procedure. Particularly, Defendant relies on the portion reading:

A bond for stay shall have sufficient surety and:

.   .   .

(2)    if an appeal is from a judgment ordering the . . . sale, delivery or possession of . . . real property, the bond shall be conditioned to secure obedience of the judgment and payment for the use, occupancy, detention and damage or waste of the property from the time of appeal until delivery of possession of the property and costs on appeal. . . .

Tenn. R. Civ. P. 62.05(2). However, Rule 62.05(2) continues to state:

(2)    . . . . *Upon motion submitted to the trial court and for good cause shown, the bond for stay may be set in an amount less than that called for in the first sentence of this section of this rule. In ruling on such a motion, the trial court may consider all appropriate factors including, but not limited to, the appealing party's financial condition and the amount of the appealing party's insurance coverage, if any. If the motion is granted, the party may obtain a stay by giving such security as the court deems proper. If leave to obtain a stay required by this rule is denied, the court shall state in writing the reasons for denial.*

Defendant also relies on Tenn. Code Ann. § 29-18-125[5] to contend that Plaintiff, who appeals following a judgment from which he lost possession in a landlord/tenant

---

[5] Tennessee Code Annotated § 29-18-125 states:

scenario, must post a bond equal to one year's rent to retain possession. We, however, have determined that his reliance is misplaced because the statute pertains to appeals "from general sessions to circuit court." *See Johnson v. Hopkins*, 432 S.W.3d 840, 844–45 (Tenn. 2013), and this case was never in general sessions court.

Rather, we have determined that Rule 62.05(2) of the Tennessee Rules of Civil Procedure is applicable because it specifies the requirements for bonds when a judgment ordering the delivery or possession of real property is stayed. Further, the Tennessee Rules of Civil Procedure "govern procedure in the circuit or chancery courts in all civil actions." Tenn. R. Civ. P. 1. As our Supreme Court explained in *Johnson v. Hopkins*:

> The Tennessee Rules of Civil Procedure "govern procedure in the circuit or chancery courts in all civil actions," and "apply after appeal or transfer of a general sessions civil lawsuit to circuit court." Tenn. R. Civ. P. 1. Thus, Rule 62.05 applies to Tenants' appeal to Circuit Court. Rule 62.05 states plainly that when an appeal is taken from a judgment "ordering the . . . possession of personal or real property," the bond to secure a stay pending appeal shall "secure obedience of the judgment and payment for the use, occupancy, detention and damage or waste of the property *from the time of appeal until delivery of possession of the property* and costs on appeal." Tenn. R. Civ. P. 62.05(2) (emphasis added). Where real property is concerned, Rule 62.05 requires a bond in an amount sufficient to cover rent and waste to the property only "until delivery of possession of the property." *Id.* Once possession of the property has been relinquished, Rule 62.05 does not require that the bond include an amount sufficient to cover rent of the property during an appeal.

432 S.W.3d at 850 (footnote omitted) (emphasis in original).

Rule 62.05(2) requires a bond in an amount sufficient to cover rent and waste to the property. The trial court determined the case at bar was an exceptional case after considering the facts and circumstances described in Plaintiff's motion for a stay and declaration, as well as those in Plaintiff's Response and Motion to Set Appropriate Bond. The trial court's decision on this issue was discretionary, and we find no abuse of the trial court's discretion.

---

> In all cases of forcible entry and detainer, forcible detainer, and unlawful detainer, the judge of the court of general sessions trying the cause shall be authorized and it shall be the judge's duty to ascertain the arrearage of rent, interest, and damages, if any, and render judgment therefor if the judge's judgment shall be that the plaintiff recover possession.

- 15 -

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are assessed against the appellant, Gerald Brown.

_____
FRANK G. CLEMENT JR., P.J., M.S.